1  Richard M. Stephens
   STEPHENS & KLINGE LLP
2  10900 NE 4th Street, Suite 2300
3  Bellevue, WA 98004
   425-453-6206
4

5

6

7

8

9              UNITED STATES DISTRICT COURT
10        FOR THE EASTERN DISTRICT OF WASHINGTON

11
   ENRIQUE JEVONS, as managing          No. 1:20-CV-03182-SAB
12 member of Jevons Properties LLC,
   FREYA K. BURSTALLER as trustee of    Plaintiffs' Motion for Summary
13 the Freya K. Burgstaller Revocable Trust,  Judgment
   JAY GLENN and KENDRA GLENN,
14
15              Plaintiffs,

16    vs.

17
   JAY INSLEE, in his official capacity as
18 Governor of the State of Washington and
   ROBERT FERGUSON, in his official
19 capacity of the Attorney General of the
   State of Washington,
20
21              Defendants.

22

23

Plaintiffs' Motion for Partial Summary
Judgment

NO. 1:20-cv-03182-SAB

# **INTRODUCTION**

In the wake of the novel coronavirus, Defendant Governor Jay Inslee, State of Washington, ("Defendant" or "Governor") State of Washington instituted a series of emergency proclamations numbered as Proclamation 20-19 through 20-19.5. These Proclamations prohibit people who provide rental housing from exercising their contractual and statutory remedies to evict tenants who have no right to remain in their property and the Proclamations prohibit treatment of unpaid rent as an enforceable debt. These changes to statutory and contractual relationships harm Plaintiffs for the benefit of tenants who refuse to pay rent for any or no reason whatsoever, knowing that they cannot be evicted for not paying rent, cannot be charged any late fees and cannot be subject to an enforceable debt or obligation when failing to make rental payments.

Plaintiffs are sympathetic to tenants who have actually suffered hardship due to the COVID-19 Pandemic. Plaintiffs have every incentive to work with those tenants who do not have the financial means to pay all or some portion of their rent. However, the Proclamations actively undermine any such attempts at cooperation and allow tenants who have the ability to pay all or some of their rent to ignore and ultimately escape their contractual obligations for the foreseeable future regardless of whether they have been financially harmed by the Pandemic.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

While many businesses have suffered as a result of the Pandemic, the owners of rental property are the only people who are required by any of the Governor's emergency proclamations to continue to provide a good or service without charge. Stores, restaurants and hotels lost business opportunities due to the Pandemic, but they were not required to continue to provide goods, food or lodging to customers without an ability to charge for the items they sold. Additionally, the owners of rental property are still required to pay property taxes and pay for sewer, water, power and garbage services and maintain the properties even when tenants in their properties are not paying anything.

The Proclamations violate the rights of people who provide rental housing by destroying a fundamental feature of their contracts, oppressively placing on them the burden of providing free housing to any and all tenants instead of properly spreading the burden on the public as a whole, and essentially mandating that their property be used and occupied by persons against the owners' will, a burden which is prohibited by the Fifth Amendment and Article I, Section 16 of the state constitution.

## **STATEMENT OF FACTS**

A separate Statement of Material Facts Not in Dispute is filed concurrently herewith. The critical facts are these:

The Proclamations at issue prohibit eviction of residential tenants except in the following narrow circumstances: where the eviction is

> necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident; or (b) shows that at least 60 days' written notice were provided of the property owner's intent to (i) personally occupy the premises as the owner's primary residence, or (ii) sell the property.

Statement of Undisputed Facts, Exhibit 7.[1] Furthermore, the Proclamations prohibit all steps necessary for pursuing an eviction. Statement of Undisputed Facts, Exhibit 6.

> The Proclamations also prohibit the treatment of unpaid but owning rent or late fees as an enforceable debt unless the owner offers the tenant who refused or failed to comply with, a re-payment plan that was reasonable based on the individual financial, health, and other circumstances of that resident.

Statement of Undisputed Facts, Exhibit 7. Nothing requires the tenants to provide information about their individual financial, health and other circumstances and many tenants choose not to provide such information. The Proclamations also require Plaintiffs to return to tenants who are relocating their security deposit even though they have unpaid rent owing. Statement of Undisputed Facts, Exhibit 7.

Plaintiffs have contracts with their tenants which require them to pay rent as a condition of the tenant's occupation of the property. The Proclamations require Plaintiffs to carry the burden of providing housing to individuals who are not

---

[1] Plaintiffs cite the most recent Proclamation for convenience even though all the Proclamations have similar, if not identical, features.

1  paying rent, regardless of their ability to pay. Plaintiffs are required to continue to

2  pay for utilities, property taxes, insurance and maintain their rental units despite not

3  receiving rent and without regard to whether the tenants have any inability to pay or

4  financial hardship.

## **ARGUMENT**

### **I**
### **Summary Judgment is Appropriate**

Rule 56 authorizes summary judgment when a party shows there is no triable

issue of fact and that the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The burden shifts to the non-

moving party to produce evidence that a triable issue of fact exists.

> Rule 56(e) itself provides that a party opposing a properly supported motion
> for summary judgment may not rest upon mere allegation or denials of his
> pleading, but must set forth specific facts showing that there is a genuine
> issue for trial.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Plaintiffs' Separate

Statement of Undisputed Facts shows there is no factual dispute for trial. It is

Defendants' burden to produce evidence that some fact is both disputed and

appropriate for trial.

### **II**

## The Proclamations Violate the Takings Clause of the Fifth Amendment to the United States Constitution

Plaintiffs seek declaratory relief under 42 U.S.C. § 1983 that the Proclamations which prohibit evictions and eliminate the right to treat unpaid debt as an enforceable obligation takes interests in private property and thereby requires compensation to be paid under the Fifth Amendment to the United States Constitution. The Takings Clause provides that private property shall not "be taken for public use, without just compensation." Fifth Amendment to the U.S. Constitution.

The purpose of the Takings Clause is to

> "bar Government from forcing some people alone to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole."

*Lingle v. Chevron Corp.*, 544 U.S. 528, 537 (2005) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). The burden of providing housing to people who cannot pay for housing due to the Pandemic is one that should be borne by the public as a whole and the Fifth Amendment's remedy of just compensation ensure that the public bears that burden.

Government action may violate the Takings Clause where it is "the functional equivalent [of] the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Id*. at 539. One such "functional equivalent" is when government action "leads to the physical invasion of private

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

property," categorized as an automatic, *per se* taking. *Garneau v. City of Seattle*,147 F.3d 802, 809 (1998) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433 (1982); *Levald v. City of Palm Desert*, 998 F.2d 680, 684 (9th Cir.1993)). As addressed below, that is exactly the situation at issue here.

**A. The Proclamations take property interests in mandating unwanted continuing occupation of Plaintiffs' properties.**

The Proclamations referenced herein fall squarely within the "physical occupation" line of cases the United States Supreme Court has held constitute "*per se*" categorical takings for which the government is required to pay just compensation. *See id.* The Proclamations force Plaintiffs who own rented property to accept the continued occupation of tenants without any payment of rent or compliance with rules concurrent with the occupancies. The Proclamations do nothing to protect Plaintiffs from losses they have and will undoubtedly continue to sustain when such tenants are unable or are able and refuse to pay their rental obligations. Plaintiffs' injuries are exacerbated by the fact that Plaintiffs still have obligations to pay property taxes to the state and local government and pay for electricity, sewer, water and garbage removal for the nonpaying tenant. *See* Plaintiffs' Separate Statement of Undisputed Facts. It is critical to Plaintiffs that the obligation imposed by the Fifth Amendment to pay just compensation be determined.

The Proclamations have thus eliminated the housing providers' fundamental constitutional right to exclude nonpaying or rule-breaking tenants from their respective properties.[2] As Justice Thurgood Marshall explained in *Loretto,* "property law has long protected an owner's expectation that he will be relatively undisturbed at least in the possession of his property" and "[t]o require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury." 458 U.S. at 436 (government requirement that private party occupy another's private property is a taking) (citing *Kaiser Aetna v United States*, 444 U.S. 164, 179–180 (1979); Restatement of Property § 7 (1936)); *see also Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949) (temporary occupation of private property). As the Supreme Court acknowledged in *Loretto,* "our cases uniformly have found a taking to the extent of the occupation, **without regard to whether the action achieves an important public benefit** or has only minimal impact on the owner." 458 U.S. at 435 (emphasis added). "The power to exclude has traditionally been considered one of the most treasured strands in an owner's bundle of property rights." *Id*; *see also F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) (likening

---

[2] The Proclamations allow eviction of tenants where "the action is necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident." Ex. 6 to Plaintiffs' Statement of Undisputed Facts. While this might allow evictions in some circumstances involving a rule-breaking tenant, it certainly does not allow eviction for all rule-breaking tenants. For instance, a tenant who has seriously damaged the rental unit is not necessarily creating an immediate risk of doing so again.

the right to exclude to the right to invite persons of one's choice onto private

property).

Federal appellate courts have also recognized the significance of the right of

owners to control who or what physically occupies an owner's property.

> In the bundle of rights we call property, one of the most valued is the right to sole and exclusive possession—the right to exclude strangers, or for that matter friends, but especially the Government. … *In re Etter,* 756 F.2d 852, 859, 225 USPQ 1, 6 (Fed.Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) ("The essence of all property is the right to exclude...."); *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed.Cir.1983) (citing *Schenck v. Nortron Corp.*, 713 F.2d 782, 218 USPQ 698 (Fed.Cir.1983)).

> The notion of exclusive ownership as a property right is fundamental to our theory of social organization. In addition to its central role in protecting the individual's right to be let alone, the importance of exclusive ownership—**the ability to exclude freeriders**—is now understood as essential to economic development, and to the avoidance of the wasting of resources found under common property systems.

*Hendler v. United States,* 952 F.2d 1364, 1374-75 (Fed. Cir. 1991) (citations

omitted) (emphasis added).

This right to be compensated when government requires the owners of private

property to endure the physical occupation of their property does not depend upon

the *duration* of the occupation.

> [I]f government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

*Arkansas Game and Fish Comm'n v. United States,* 568 U.S. 23, 26 (2012); *see also First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.,* 482 U.S. 304 (1987).

Several courts have suggested that an eviction moratorium cannot constitute a government-mandated physical occupation because of the Supreme Court's decision in *Yee v. City of Escondido, Cal.*, 503 U.S. 519 (1992). *See, e.g., Auracle Homes, LLC v. Lamont*, 478 F.Supp.3d 199, 220 (D. Conn. 2020) (citing *Yee*). The Court in *Yee* stated that landlords did not suffer a physical occupation by their tenants at the insistence of the City because Plaintiffs "voluntarily rented their land" to residential tenants. *Yee,* 505 U.S. at 527.

But it is important to recognize the difference between what was challenged in *Yee* and what is challenged here. The landlords in *Yee* were challenging an ordinance regulating the amount of rent. After recognizing that required physical occupation of property resulted in a taking, the Court in *Yee* concluded that is not what happened in *Yee* because nothing in the ordinance required the tenants' continued occupation—unlike the present case. *Id.* at 527. Specifically, the Escondido ordinance allowed the owner to terminate the tenancy when there was "nonpayment of rent" or "violation of law or park rules." *Id.* at 524. And while the Plaintiffs in *Yee* claimed there were restrictions on eviction, the Court found that "neither the city nor the State compels petitioners, once they have rented their

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

property to tenants, to continue doing so." *Id.* at 527-28. That is a critically distinguishing feature between the challenge in *Yee* and the present challenge. The Proclamations require Plaintiffs to continue to have someone else occupy their property for a longer period than they ever agreed to.

Ultimately, the decision in *Yee* agrees with Plaintiffs' position here: "Had the city required such a [physical] occupation, of course, petitioners would have a right to compensation." *Id.* at 532. There is nothing in *Yee* to suggest that a mandated occupation of property by a tenant who is not paying rent has some exclusion from the protection of the Taking Clause of the Fifth Amendment.

**B. The Proclamations also take property rights in Plaintiffs' rental contracts.**

Plaintiffs' property rights in their rental contracts have also been taken. The United States Supreme Court's rule that contractual rights are protected from uncompensated taking was summarized by the Federal Circuit: "[T]here is also ample precedent for acknowledging a property interest in contract rights under the Fifth Amendment." *Cienega Gardens v. United States*, 331 F.3d 1319, 1329 (Fed. Cir. 2003) (citing *Lynch v. United States*, 292 U.S. 571 (1934); *United States v. Petty Motor Co.,* 327, 381 (1946); *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977)). The Proclamations have taken Plaintiffs' property rights in their contracts (their leases). Those contractual rights include the right to

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

receive rent and late fees when appropriate and the Proclamations have taken those contractual rights away. The Fifth Amendment requires just compensation for the taking of those rights.

### C. The Proclamations take Plaintiffs' interests in security deposits.

Proclamation 20-19.5, like the Proclamations before it, require:

> [L]andlords, property owners, and property managers are prohibited from treating any unpaid rent or other charges related to a dwelling or parcel of land occupied as a dwelling as an enforceable debt or obligation that is owing or collectable, where such non-payment was as a result of the COVID-19 outbreak and occurred on or after February 29, 2020, and during the State of Emergency proclaimed in all counties in Washington State. This includes … withholding any portion of a security deposit.

Statement of Undisputed Facts, Exhibit 6. In other words, security deposits cannot be used to reimburse landlords for unpaid rent. If a tenant chooses to leave without paying all rent that is due, the Proclamations require that the tenant gets the security deposit back without deduction for unpaid rent. This is contrary to the purpose of security deposits. *See* Exhibit 8 to Plaintiffs' Separate Statement of Undisputed Facts (Jevons Decl.) The Proclamations take the property owners' property interest in the security deposit.

The Supreme Court has long held that the Takings Clause protects people from government taking of money or interests in money. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155 (1980) (taking of interest of interpleaded funds violated the Fifth Amendment). The Court in *Brown v. Legal*

*Foundation of Washington,* 538 U.S. 216 (2003) applied the Takings Clause to attorney clients' property interest in the earning potential of money deposited in lawyer trust accounts. The Court specifically analogized the situation to the taking of leaseholds as is the case here.

> "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, *United States v. Pewee Coal Co.*, 341 U.S. 114, 115, 71 S.Ct. 670, 95 L.Ed. 809 (1951), regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof. Thus, compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary."

*Brown,* 538 U.S. at 233 (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302 (2002)).

The Court concluded that the taking of interest on deposits of client trust funds should be analyzed as a *per se* taking, like the physical occupation cases. *Id.* at 235. However, because the deposited funds are too small to generate sufficient income to offset the cost of maintaining the deposit and because the Takings Clause requires that property owners be reimbursed for their losses, the compensation was zero because the loss was zero. *Id.* at 237.

This is not true with Plaintiffs and security deposits. Those funds are for the purpose of ensuring that rent is paid and that the property owners have some security for the payment of rent. *See* Plaintiffs' Separate Statement of Undisputed Facts at Exhibit 8.

The Proclamations create a situation similar to that addressed in *Armstrong v. United States,* 364 U.S. 40 (1960), a case that involved the destruction of materialmen's liens on property that was subsequently acquired by the United States. Because the federal government has sovereign immunity, the Government took the position that the liens on the property it acquired disappeared. The Supreme Court explained:

> Before the United States compelled Rice to transfer the hulls and all materials held for future use in building the boats, petitioners had valid liens under Maine law against both the hulls and whatever unused materials which petitioners had furnished. Before transfer these lines were enforceable by attachment against both the hulls and all materials. After transfer to the United States the liens were still valid, *United States v. State of Alabama*, 313 U.S. 274, 281—282, 61 S.Ct. 1011, 1013—1014, 85 L.Ed. 1327, but they could not be enforced because of the sovereign immunity of the Government and its property from suit. The result of this was a destruction of all petitioners' property rights under their liens, although, as we have pointed out, the liens were valid and had compensable value.

*Armstrong,* 364 U.S. at 46 (footnote omitted). The Supreme Court in *Armstrong* was quite clear that just compensation was due. *Id*. at 48. Similarly, Plaintiffs had the right to apply security deposits to the amount of rent that is owed and unpaid by tenants, but the Proclamations render that right unenforceable.

The parallel between the liens in *Armstrong* and the security deposits in the present case is unmistakable. Under Washington law, a security deposit's "legal effect depends on the language of the lease." *J & J Food Ctrs., Inc. v. Selig*, 76 Wn.2d 304, 307, 456 P.2d 691 (1969). Here, Plaintiffs' leases provide that the

security deposit may be used for rent owed and late fees in addition to cleaning. *See* Plaintiffs' Statement of Undisputed Facts. The legal effect of these security deposits was to provide security, like the liens in *Armstrong*, for the payment of rent. A security deposit functions in the same way as a lien on property. It is there to ensure payment for services rendered, or in the case of a lease, payment for permission to occupy the property.

This is reinforced by RCW 59.18.260 which requires a written agreement whenever "moneys are paid to the landlord by the tenant as a deposit or as security for performance of the tenant's obligations in a lease or rental agreement." And that agreement "shall include the terms and conditions under which the deposit or portion thereof may be withheld by the landlord upon termination of the lease." RCW 59.18.260. The Proclamations are completely contrary to these provisions in prohibiting the use of security deposits to cover any portion of unpaid rent.

The protection of the Fifth Amendment is that compensation from the public is required when property is taken so that individuals do not bear the burden of societal needs. A valid or important purpose behind the taking is insufficient to remove the Constitution's protection. *See Loretto*, 458 U.S. at 435. By requiring Plaintiffs to endure the physical occupation of their property without payment of any rent deprives them of their property during this time period and deprives them of their contractual right to receive rent. The Court should declare that a taking of

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

Plaintiffs' rights in their property has been taken by the Proclamations and the just compensation is the required remedy for the Fifth Amendment violation.

### D. The Western District of Washington's denial of a preliminary injunction in *El Papel* supports Plaintiffs' position.

The federal district court for the Western District of Washington last December denied a motion for a preliminary injunction challenging both the Eviction Moratorium in the Proclamations and an eviction ban by the City of Seattle based on takings and contract clause grounds. *El Papel LLC v. City of Seattle*, December 2, 2020, Slip Copy 2020 WL 8024348.

In regard to the claim that the Eviction Moratorium caused a taking, the Court in *El Papel* was persuaded that a claim for injunctive relief for violation of a Taking Claim was inappropriate because a claim for damages would always be available. *Id.* at *12. Plaintiffs here agree that injunctive relief to stop the state from taking their property would be inappropriate under the Fifth Amendment.[3] It is inappropriate because the Fifth Amendment does not prohibit takings; it simply requires (eventual) payment of just compensation. *Hurley v. Kincaid*, 285 U.S. 95, 104, (1932). Even though delayed payment is better than nothing, Plaintiffs still need to know whether there is an obligation to pay compensation in these

---

[3] As addressed *infra* at Section III, the taking provision of Article I, Section 16 of the Washington constitution is different in that it requires payment of just compensation prior to the taking.

1  circumstances because their only option to cut their losses may be to sell their

2  property—a basis for which evictions are still allowed.

3      The *El Papel* court relied on *Knick v. Township of Scott, Pennsylvania, ___ U.S.*

4  *____*, 139 S.Ct. 2162 (2019) for the proposition that an injunction to stop a taking is

5  inappropriate. "Given the availability of post-taking compensation, barring the

6  government from acting will ordinarily not be appropriate." *Knick,* 139 S.Ct. at

7  2177. Plaintiffs agree. The Court in *Knick* was addressing ripeness concerns from

8  *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172

9  (1985) which the Court in *Knick* overruled. *Knick* specifically addressed

10 *Williamson County*'s reliance on *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986

11 (1984), which is relevant to Plaintiffs' claim here. The Court in *Ruckleshaus*

12 concluded that "Equitable relief is not available to enjoin an alleged taking of

13 private property for a public use, duly authorized by law, when a suit for

14 compensation can be brought against the sovereign subsequent to the taking." *Id.* at

15 1016 (footnote omitted). But the reference to "equitable relief" is that which would

16 "enjoin an alleged taking." *Id.* Equitable relief as used by the Court in *Ruckelshaus*

17 cannot be read to include declaratory relief (an equitable remedy), not only because

18 declaratory relief is not enjoining anything, but the preceding section of the Court's

19 opinion in *Ruckelshaus* constituted resolution of several issues regarding the taking

20 of the Plaintiffs' property; it was essentially providing declaratory relief.

Here, Plaintiffs are not seeking injunctive relief in regard to their federal Takings Clause Claim. They are seeking declaratory relief that the Proclamations cause a taking. Although the remedy for a Fifth Amendment taking of property is just compensation, courts have ruled that the question as to whether a taking occurred and compensation must be paid is an appropriate question to be resolved with declaratory relief. *See, e.g., Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 71 n. 15 (1978).[4]

In fact, the District Court in *El Papel* gave a conclusion similar to what Plaintiffs seek here:

> It appears that a measure of just compensation is readily available if plaintiffs were able to establish a government "taking" of their properties, in the form of unpaid rent and late fees. *Accord Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, No. CV SAG-20-1818, 2020 WL 3639991, at *4 (D. Md. July 6, 2020) ("If Plantiffs [sic] successfully prove that the Acts unlawfully deprived them of rental income that they had negotiated with their tenants, then their damages should be readily calculable."). Other courts have agreed when ruling on COVID-19 legislation challenges. *Accord Baptiste*, 2020 WL 5751572, at *23; *Cty. of Butler v. Wolf*, No. 2:20-CV-677, 2020 WL 2769105, at *4 (W.D. Pa. May 28, 2020).

*El Papel*, 2020 WL 8024348, at *13.

---

[4] *See also In re Chateaugay Corp.*, 53 F.3d 478, 492 (2nd Cir. 1995) ("Yet in *Duke Power*, the Court appears to have explicitly endorsed district courts' exercise of jurisdiction over declaratory judgment actions founded on the Takings Clause, even when no prior attempt to secure compensation in the Federal Claims Court has been made."); *Amchem Prods., Inc. v. Costle*, 481 F. Supp. 195, 199 (S.D.N.Y. 1979) ("plaintiffs here do not seek damages but rather a declaratory judgment of unconstitutionality … This they may properly do");

As in *Duke Power*, Plaintiffs are seeking a declaration that a taking of their property has occurred so that once their entitlement to compensation is resolved by the Court, Plaintiffs can begin the process, hopefully in the absence of litigation, for the required just compensation to be paid. Without a declaration that a taking has occurred, Defendants have no incentive to pay anything. Plaintiffs seek a declaration that the inability to remove nonpaying tenants caused by the Proclamations entitles Plaintiffs to just compensation in the amount of unpaid rent, unpaid utility charges and unpaid late fees.

> The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

*Armstrong,* 364 U.S. at 49.

The same rationale applies here. To the extent that one could argue that society as a whole (and not just the individual tenants) benefits by allowing tenants to remain in their leaseholds during the pandemic, the burden of that benefit to society has been disproportionately—*in fact, exclusively*—placed on the owners of the property. Plaintiffs urge the Court to declare that they must be provided just compensation for providing this public benefit at their own private expense.

## III
## The Proclamations Violate Article I, Section 16 of the Washington Constitution

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

Article I, Section 16 of the Washington Constitution expressly provides that just compensation must be provided prior to any taking of property for public use and prohibits taking of private property for private use. The State Supreme Court has concluded that the standards for finding a taking of property without formal condemnation are the same as finding a taking under the Fifth Amendment to the United States Constitution. *See Yim v. City of Seattle (Yim I),* 194 Wn. 2d 651, 672 (2019) ("we continue our long-standing practice of following federal law in defining regulatory takings"). Hence, a taking under federal law as addressed above also constitutes a taking under state law which triggers the provisions of Article I, Section 16 of the Washington constitution.

Moreover, the Washington Supreme Court has recognized that a deprivation of the right to evict constitutes a taking of property rights. In *Granat v. Keasler*, 99 Wn.2d 564, 570 (1983), the Supreme Court held that a City of Seattle restriction on evicting tenants from floating homes caused a taking of the owners' properties. The *Granat* court agreed with the plaintiff that Seattle's eviction restriction took a property interest from the owner, noting that the regulation was not a mere limitation on property use because "the landlord is prohibited from the intended use of the property, but not the tenant." *Id*. at 570 (*cited in San Telmo Assocs. v. City of Seattle,* 108 Wn. 2d 20, 25 (1987) (addressing need for low income housing as a societal burden which should not be imposed solely on housing providers)). Here,

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

the Proclamations' Eviction Moratorium is not merely limiting use, but similarly transferring the right of possession from the owner of the property to a tenant or squatter.

In addition to taking property by denying the right to exclude, the Proclamations also take housing providers contractual rights to receive rent—and the rent itself—which also constitute property interests. *See Spokane School Dist. No. 81 v. Parzybok,* 96 Wn.2d 95, 97-98 (1981). "[T]he word 'property' as used in constitutions providing for compensation when such is taken in eminent domain, should be 'held to include every valuable right and interest which a person can have in or appurtenant to land.'" *Id.* at 98 (quoting 2 J. Lewis, Eminent Domain § 540 (3rd ed. 1909), at 967). The Washington Supreme Court concludes that an optionee "has suffered a loss of his property, be it only a contract right, in a definitely measurable amount. It is equitable that he should recover that amount." *Id.* at 104.

Finally, the taking of Plaintiffs' property interests are not for public use at all, but for the private use of tenants. No member of the public, much less the public as a whole, has a right to use those tenancies or avoid paying rent for occupying a property. Unlike the Fifth Amendment to the United States Constitution, Article I, Section 16 of the Washington constitution is explicit: "Private property shall not be taken for private use." *See also State ex rel. Washington State Convention and Trade Center v. Evans,* 136 Wn.2d 811, 817 (1998) ("The constitution prohibits the

taking of private property for a private use.") The Proclamations are in violation of the explicit prohibition in Article I, Section 16 of the Washington state constitution on the state taking private property for private use.

## IV
### The Proclamations violate the Contracts Clause, Art. 1, § 10 of the United States Constitution

The Contracts Clause, Art. 1, § 10, of the United States Constitution, provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." Plaintiffs have existing lawful contracts with tenants. *See* Plaintiffs' Separate Statement of Undisputed Facts.

A Contract Clause analysis follows three steps. *See RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004). First, a court examines whether the law creates a "substantial impairment" of contractual obligations. *Id.* (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). If yes, then the court asks whether the government has a "significant and legitimate public purpose" designed to solve a "broad and general social or economic problem" as opposed to offering "a benefit to special interests." *Id.* (quoting *Energy Res. Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 412 (1983)). Finally, the court inquires whether the adjustment of 'the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption.' " *Id.* (quoting *Energy Res*, 459

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

U.S. at 412-13 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22 (1977))).

**A. The Proclamations constitute a substantial impairment of contracts.**

In determining whether a contractual impairment is substantial, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen v. Melin,* ___ U.S. ___, 138 S.Ct. 1815, 1822 (2018). The Eviction Moratorium substantially impairs residential leases because the ability to evict is a cornerstone of the contractual bargain, destroys Plaintiffs' reasonable expectations and completely prevents them from safeguarding his or her investment and reinstating their rights to payment or possession.

When the prohibition on treating unpaid rent as a debt is added to the mix, the Proclamations even more so cause a substantial impairment of residential lease agreements by removing all practical remedies for contractual violations. It offers a benefit to a particular group—residential tenants—at the expense of the housing providers, rather than the public as a whole.

Substantial impairment of Plaintiffs' contracts has occurred with the Proclamations because the right to enforce them has been completely taken away. "Contracts … are impaired within the meaning of the Constitution (article I, § 10, cl. 1) whenever the right to enforce them by legal process is taken away or

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

materially lessened." *Lynch v. United States,* 292 U.S. 571, 580 (1934). "[I]t is

manifest that the obligation of the contract, and the rights of the party under it, may,

in effect, be destroyed by denying a remedy altogether." *Bronson v. Kinzie,* 42 U.S.

311, 317 (1843). That is exactly what the Proclamations do by prohibiting Plaintiffs

from treating unpaid rent as a contractual obligation and prohibiting evictions

unless one can prove a crime is being committed or the owner decides to sell the

property. The impairment is substantial because Plaintiffs have been stripped of all

remedies for enforcement of the contractual rights. They are not even allowed to

have a court resolve any disputes with tenants while the Proclamations are in effect.

### B. The impairment is not based upon reasonable conditions and is not of a character appropriate to the public purpose justifying the Proclamations.

Initially, it is important to note when a law substantially impairs a contract,

*Defendants* bear the burden of showing that the impairment is both reasonable and

necessary. *United States Trust Co.*, 431 U.S. at 31; *see also Sveen v. Melin,* 138

S.Ct. at 1822. For the reasons that follow, Defendants cannot meet this burden.

The Proclamations are not based on reasonable conditions, nor are of an

appropriate character. The Eviction Moratorium has no condition of protecting

people who have lost income or health due to the Pandemic. Every tenant is free to

not pay rent without consequence. While some tenants honor their obligation, other

do not even if they can. Having no tie to loss of income or health considerations renders the Eviction Moratorium not based on reasonable conditions.

Prohibiting Plaintiffs from treating their unpaid rent as a debt is completely unreasonable and completely unnecessary. It does nothing to prevent the spread of the corona virus. All it does is eliminate a contractual obligation of tenants in their lease contracts. The Eviction Moratorium is unreasonable and unnecessary as well. While it keeps people in housing, it keeps others out of housing. Plaintiffs are not interested in evicting people for the sake of evicting or for leaving the properties unoccupied. They are in the business of renting property to tenants who need housing and have the ability to pay. Given the rental housing market in Yakima, Plaintiffs would like find new low income tenants to replace those who would be evicted. *See* Plaintiffs' Separate Statement of Undisputed Facts, Exhibit 8.

The Supreme Court's decision *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 445 (1934) is instructive on this question. The Court held that a moratorium on foreclosure of mortgages during the Great Depression did not violate the Commerce Clause. *Id.* Its reasoning is important. The Supreme Court looked to *Block v. Hirsh*, 256 U.S. 135 (1921), *Marcus Brown Holding Co. v. Feldman*, 256 U.S. 170 (1921) and *Edgar A. Levy Leasing Co. v. Siegal*, 258 U.S. 242 (1922), *cited in Blaisdell*, 290 U.S. at 440. The New York law at issue in *Marcus Brown* imposed a

prohibition on evictions but all tenants had to be "ready, able, and willing to pay a reasonable rent or price for their use and occupation." *Id.* at 440-41.

That is the opposite of what the Proclamations do here. They prohibit evictions of tenants regardless of whether tenants have a legitimate excuse for not paying rent.

> In these cases of leases, it will be observed that the relief afforded was temporary and conditional; that it was sustained because of the emergency due to scarcity of housing; and that provision was made for *reasonable compensation to the landlord during the period he was prevented from regaining possession.*

*Id.* at 441-42 (emphasis added).

Here, however, the Proclamations are neither temporary nor conditional. The prohibition on treating unpaid rent or prohibiting late fees appears to go on forever. Nor do the Proclamations provide for "reasonable compensation" to housing providers. Indeed, the Eviction Moratorium expressly allows tenants to remain in possession without paying any rent during the emergency period. The Proclamations are not reasonable or appropriate to any legitimate end. *Blaisdell,* 290 U.S. at 438.

This conclusion is reinforced by other courts which have rejected Commerce Clause challenges to other eviction moratoria. For instance, in *Heights Apartments, LLC v. Walz,* ___ F.Supp.3d ___ (D. Minn. 2020) 2020 WL 7828818, the Court found no Contracts Clause violation because tenants were still responsible for

paying their rent even if they couldn't be evicted. This is not true under the

Proclamations at issue in the present case.

There can be no doubt that the Eviction Moratorium confers a special benefit to

special interests, namely, tenants. Plaintiffs are sympathetic to tenants who are

actually struggling financially as a result of the Pandemic. But the Eviction

Moratorium is not limited to those cases and Plaintiffs are not sympathetic to

tenants who have suffered no loss of income but choose not to pay rent because the

Proclamations say they don't have to. The Proclamations allow all tenants,

including those who continue to be employed full time because they can work from

home or otherwise, to live without ever paying rent because they cannot be evicted

until the eviction moratorium is over and can never have their unpaid rent treated as

a legal obligation they must pay. The only qualification for being protected from

eviction is that one be a tenant in Washington. This is a quintessential special

benefit for a special interest group—tenants.

As addressed above, to survive a Contract Clause claim, substantial impairment

of a contract must be "tailored to the emergency that it was designed to meet."

*Allied Structural Steel Co.,* 438 U.S. at 242. And it is unnecessary and unreasonable

when "an evident and more moderate course would serve [the state's] purposes

equally well." *United States Trust of New York*, 431 U.S. at 31. The current

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

Proclamation claims as its rationale the unemployment prompted by Pandemic-related business shutdowns is likely to make it difficult for tenants to pay rent.

But removal of the contractual remedy is not tailored to this emergency. It prohibits evictions regardless of a tenant's employment or ability to pay. Not only is the contractual right to receive payment jeopardized—a housing provider cannot evict a tenant for violations of a lease unrelated to rent, such as rules related to the welfare of other tenants. That is evident here. Plaintiff Freya Burgstaller tried to evict a tenant who was not paying but was also creating noise problems for other tenants. *See* Burgstaller Decl. She was stopped by the Eviction Moratorium in the Proclamation and she, and her other tenants, are essentially barred from remedying the problem. As addressed *supra* at 8 n. 2, the Proclamations allow eviction of tenants when "the action is necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident." Causing disturbing noise is not a significant and immediate risk to the health, safety or property of others.

The Proclamations' ban on rent collection is not tailored to the emergency either. Housing providers are prohibited from treating unpaid rent as an enforceable debt and bringing a breach-of-contract action. But the interests in preventing homelessness are not furthered by preventing the housing provider from bringing an action to recover overdue rent.

Under these standards, the Proclamations violate the Contracts Clause of the United States Constitution. The Eviction Moratorium fundamentally overturns the contractual bargains struck between Plaintiffs and their tenants by effectively relieving the tenants of their obligation to pay rent and comply with other provisions of their leases and leaving housing providers, like Plaintiffs, without any recourse for an undetermined period of time. Under the Eviction Moratorium, housing providers are required to allow tenants to remain on the properties rent free for an unspecified duration of time, thus depriving Plaintiffs of the opportunity to collect any portion of rent from their current tenants, or otherwise rent their properties to tenants who can and are willing to pay rent.

The Proclamations are the quintessential "substantial" impairment, as they "undermine the contractual bargain, interfere with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen,* 138 S.Ct. at 1822. As a result of the issuance and enforcement of the Proclamations, Defendants have violated Plaintiff's constitutional rights to the free use of their properties. The Proclamations abrogate Plaintiff's contractual rights in that they permit tenants to unilaterally violate the terms of their leases, without the housing provider's consent.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

## C. The Western District of Washington's decision in *El Papel* does not dictate a contrary result.

The District Court for the Western District of Washington also considered the preliminary injunction request in *El Papel* based on the likelihood of success on a contracts clause claim. While the Court assumed there was a substantial impairment of contracts, the Court concluded that the Plaintiffs were unlikely to succeed on the merits of this claim because the eviction moratorium was temporary and the owners of rental property would eventually be able to enforce their right to be paid for past rent. *El Papel,* 2020 WL 8024348 at *7-8 (citing *Blaisdell,* 290 U.S. 398 and *W.B. Worthen Co. v. Kavanaugh,* 295 U.S. 56 (1935)). But the Court in *El Papel* was only looking at the moratorium on evictions. Plaintiffs here challenge the moratorium coupled with the prohibition on treating unpaid rent as an enforceable debt. These combined features distinguish the present situation from that in *Blaisdell* and render the Proclamations more like *Kavanaugh,* a situation where the Government was extending a redemption period and thereby making property unavailable for possession. While dealing generally with the same Proclamations, *El Papel* involved only a portion of what Plaintiffs challenge here.

The Proclamations unilaterally rewrite all residential leases within the State of Washington. The complete obliteration of Plaintiffs' contracts and tenants' obligations to pay rent under such contracts is not a reasonable way of achieving

any legitimate purpose. Accordingly, the contractual impairments effectuated by the

enactment and enforcement of the Proclamations violate the Contracts Clause and

are thus unconstitutional.

**IV**
**The Proclamations Violate the Due Process**
**Clause of the Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment to the United States

Constitutions stands as an additional constitutional hurdle to the Governor's

issuance of the Proclamations. Under the Due Process Clause, no State shall

"deprive any person of life, liberty, or property, without due process of law."

This provision "provides heightened protection against government interference

with certain fundamental rights and liberty interests," including the "specific

freedoms protected by the Bill of Rights" and "those fundamental rights and

liberties which are, objectively, 'deeply rooted in this Nation's history and

tradition,'" such as rights in property. *Washington v. Glucksberg,* 521 U.S. 702,

720-721 (1997) (quoting *Moore V. E. Cleveland,* 431 U.S. 494, 502 (1977)). Thus

while the "police power" of the government may be broad, it "must be exercised

within a limited ambit and is subordinate to constitutional limitations." *Panhandle*

*E. Pipe Line Co. v. St. Highway Comm'n of Kansas,* 294 U.S. 613, 622 (1935). The

State's police power therefore does not afford "unrestricted authority to accomplish

whatever the public may presently desire." *Id.*

There are a variety of ways in which a state regulation may violate substantive

due process. Plaintiffs assert the Proclamations have two types of substantive due

process failures. One is that the Proclamations are too vague in notifying Plaintiffs

what constitutes a reasonable repayment plan, which is the key to ever having an

enforceable debt applied to tenants who have not complied with their contracts. The

other is that the Proclamations are oppressive.

**A. The Proclamation's key to retaining one's right to payment of rent depends on a criterion which is too vague to comply with the substantive due process.**

Substantive due process requires fair notice of the law. *F.C.C. v. Fox Television*

*Stations, Inc.,* 567 U.S. 239, 253 (2012) (failure to provide fair notice).

> This requirement of clarity in regulation is essential to the protections
> provided by the Due Process Clause of the Fifth Amendment. *See United*
> *States v. Williams*, 553 U.S. 285, 304, … (2008). It requires the invalidation
> of laws that are impermissibly vague.

*Fox Television Stations*, 567 U.S. at 253.

The Proclamations declare that unpaid rent or fees cannot be treated as an

enforceable debt unless

> the resident was offered, and refused or failed to comply with, a re-payment
> plan that was reasonable based on the individual financial, health, and other
> circumstances of that resident.

Statement of Undisputed Facts, Exhibit 7. Plaintiffs cannot offer a repayment plan

to a tenant that meets the tenant-specific criteria because they don't have the

information necessary. Tenants are not required to provide information or answer

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

questions about their health, financial or other circumstances so it is impossible for Plaintiffs to know how to meet this criterion which is the key to the very existence of whether they have a debt to ever enforce. Washington law, like most states, recognizes that property interests can be created by contract. *Durland v. San Juan County,* 182 Wn.2d 55, 70-71 (2014). Plaintiffs' interest in the contracts—the enforceability of the contractual debt owed—is taken away by the Proclamations unless Plaintiffs' meet a criterion which is unknowable.

Plaintiffs cannot take tenants to court to find out this information in a deposition. And the manner in which Proclamations read, there is no way to know whether this criterion was met is after the Proclamations are no longer in effect. Substantive due process requires that ordinary people be able to know how to comply with the law by reading it. That is impossible here.

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad
>
> hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).  The Proclamations offend due process by making Plaintiffs' entitlement to repayment of debt hinge on an ad hoc, subjective criterion which cannot be known by them in advance.

**B. The Proclamations are in the whole unduly oppressive.**

Due process as long prohibited laws which are unduly oppressive. *Mugler v. Kansas*, 123 U.S. 623 (1887); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (due process prevents government "from abusing [its] power, or employing it as an instrument of oppression."); *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 709 (1884) (if a government action is "found to be arbitrary, oppressive, and unjust, it may be declared not 'due process of law'"); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 594 (1962) (regulation of property must be "not unduly oppressive upon individuals").

The undue oppression prong is a necessary component of this evaluation because "[t]here is no reasonable or rational basis for claiming that the oppressive and unfair methods [are] in any way essential the [legitimate government objective]." *Haynes v. State of Wash.*, 373 U.S. 503, 519 (1963).  In other words, not only does the governmental interest need to be legitimate, but the means of accomplishing that interest must be legitimate, and not oppressive, as well. The Supreme Court has recognized that due process protects people "from an unfair

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

allocation of public burdens." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 618 (2013). The Proclamations are blatantly seeking to force the responsibility of shouldering a societal burden on one group—the owners of rental housing.

Just as hunger is a real community problem and a law forcing restaurants to allow people to eat for free would rationally accomplish that legitimate government interest in reducing hunger or malnutrition, the means would be unduly oppressive on restaurant owners, or, in other words, an unfair allocation of public burdens. The same is true with rental housing. While homelessness may be a real community problem, it is unduly oppressive on the owners of rental housing to provide housing without receiving any compensation.

The fundamental nature of Plaintiffs' rights to determine the conditions upon which a person may continue to occupy the owner's property is evidenced by several related constitutional provisions. As address *supra* at Section II, the Takings Clause of the Fifth Amendment recognizes that the right to exclude people from one's own property is fundamental.

> "One of the main rights attaching to property is the right to exclude others," and, in the main, "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the
>
> right to exclude." *Ibid.* (citing 2 W. Blackstone, Commentaries on the Laws of England, ch. 1).

*Byrd v. United States,* ___ U.S. ___, 138 S.Ct. 1518, 1527 (2018); *see also Kaiser Aetna,* 444 U.S. at 176 (the right to exclude others, is "one of the most essential sticks in the bundle of rights that are commonly characterized as property.")

The right to control the terms under which someone can occupy one's property, including how long that occupation may last or what payment or conditions of behavior the occupation may require, is a fundamental attribute of property ownership. The Proclamations are unduly oppressive because they takes that right away and forces property owners to retain tenants even when they are injurious to the property, business, or other tenants.

The right to cease employment is the corollary of the fundamental right to choose specific private employment.

> the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails.

*Yick v. Hopkins*, 118 U. S. 356, 370 (1886). Just as the right to choose one's profession is a fundamental right, so is the right to decide to take a break from the same. Not only must one endure the occupation of their property without payment of rent (and forever forgoing past rent), those providing housing are not allowed to temporarily cease their employment due to "landlord fatigue" or other reasons. In order to obtain a break from the occupancy of the property and continuation of the

housing provider-tenant relationship is to either personally occupy the property or sell the property. The Proclamations violate substantive due process because they are arbitrary and capricious and unduly oppressive in regard to the right to cease employment or condition that right upon selling or personally occupying the property. This constitutes unconstitutional conditions on the exercise of one's rights to discontinue renting property. *Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595 (2013); *see also Lingle*, 544 U.S. 528 (2005) (describing *Nollan v. California Coastal Comm'n*, 483 U.S. 425 (1987) and *Dolan v. City of Tigard,* 512 U.S. 374 (1994) as unconstitutional conditions cases). Unconstitutional conditions are a type of due process violation. *See Zepeda Rivas v. Jennings,* --- Fed.Appx. ---- 2021 WL 631805 (9th Cir. 2021).

As a result of the Proclamations, Plaintiffs are unjustifiably prevented from being able to rightfully use their properties and mitigate damages where tenants fail to pay rent. At a minimum, Plaintiffs should be able to continue to collect rent from those tenants that are able to pay or even a reasonable portion of the total amount of rent due and owing, and should be allowed a forum to contest a tenant's claim concerning qualifications for protections under the Proclamations.

## V.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

**Plaintiffs are entitled to relief under 42 U.S.C. § 1983**

Plaintiffs bring their claims for declaratory relief under the Civil Rights Act, 42 U.S.C. Section 1983.

> The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

*Carey v. Piphus*, 435 U.S. 247, 257 (1978).

State officials sued in their official capacity for prospective injunctive and declaratory relief are potentially liable under Section 1983 because the suit is not seeking compensation from the state, which would raise Eleventh Amendment immunity issues. *See Hafer v. Melo,* 502 U.S. 21 (1991). The United States Supreme Court has repeatedly acknowledged that liability for a taking of property under the Fifth Amendment to the United States Constitution may be redressed under 42 U.S.C. § 1983. *See, e.g, Knick,* 139 S.Ct. 2162. The Contracts Clause too is enforceable through Section 1983. *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003). Substantive due process is as well. *Lewis,* 523 U.S. 833.

For the violation of Plaintiffs' constitutional rights as addressed above, they urge the Court to grant declaratory relief under 42 U.S.C. Section 1983.

**Conclusion**

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

This suit is not about the intentions of the Defendants in dealing with a public health crisis. Plaintiffs acknowledge the crisis. But unless Plaintiffs' rights are also recognized, the burden of dealing with this crisis will be inappropriately foisted on them. Plaintiffs urge the Court to grant this motion for summary judgment lest they be saddled with providing housing at their own expense instead of an expense shared by the community at large.

Respectfully submitted this 30th day of April, 2021,

Stephens & Klinge LLP

*/s/ Richard M. Stephens*
WSBA No. 21776
Stephens & Klinge LLP
601-108th Avenue NE, Suite 1900
Bellevue, WA 98004
stephens@sklegal.pro
425-453-6206
Attorneys for Plaintiffs