1

2

3

4

Richard M. Stephens
STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA  98004
425-453-6206

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

11

12

13

14

15

16

17

18

19

20

21

22

23

ENRIQUE JEVONS, as managing
member of Jevons Properties LLC,
FREYA K. BURSTALLER as trustee of
the Freya K. Burgstaller Revocable Trust,
JAY GLENN and KENDRA GLENN,

　　　　　Plaintiffs,

 vs.

JAY INSLEE, in his official capacity as
Governor of the State of Washington and
ROBERT FERGUSON, in his official
capacity of the Attorney General of the
State of Washington,

　　　　　Defendants.

No.  1:20-CV-03182-SAB

Plaintiffs' Opposition to Defendants'
Motion for Summary Judgment and
Reply in Support of Plaintiffs' Motion
for Summary Judgment

Oral Argument Scheduled for July 1,
2021

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

# Table of Contents

Page

Table of Contents…………………………………………………………………………i

Table of Authorities…………………………………………………………………iii

Introduction……………………………………………………………………..1

Statement of Facts…………………………………………………………………1

Argument…………………………………………………………………………..1

I
The Court possesses subject matter jurisdiction…………………………………1

  A. Plaintiffs have standing………………………………………………...……1

  B. Plaintiffs' Claims are not Moot……………………………………………4

  C. Eleventh Amendment immunity does not preclude this action……….…..5

  D. The Court can dismiss the Third Claim for Relief which asserts
    a state law claim…………………………………………………………7

II
The Proclamations Cause a Taking of Property Covered by the
  Fifth Amendment to the United States Constitution…………………………..7

  A. The Proclamations mandate a continued physical occupation
    of Plaintiffs' properties……………………………………………….…7

  B. The Proclamations take Plaintiffs' property rights in their contracts…….12

  C. The Proclamations take Plaintiffs' interests in security deposits
    and give them to tenants without providing security to Plaintiffs………..14

  D. Declaratory relief is available for the Fifth Amendment claim…………..15

IV

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

The Proclamations violate the Commerce Clause………………………………18

   A.  The Proclamations as a whole undermine the contractual bargain……......18

   B.  The Proclamations impair reasonable expectations………………………25

   C.  The Proclamations hinder Plaintiffs' ability to safeguard their rights…....27

   D.  The Proclamations do not advance their significant public purpose
      in an appropriate and reasonable manner…………………………………27

   E.  The Court should not follow other federal court's decisions
      that have upheld other eviction moratoria………………………………...28

III
The Proclamations violate substantive due process……………………………...29

   A. Due process people from unduly oppressive governmental action………30

   B.  The Proclamations violate due process by being void for vagueness…….32

   C.  Defendants do not respond to the unconstitutional conditions
      argument………………………………………………………………..33

   D. Plaintiffs' due process claims are not subsumed into other claims……….34

IV
Plaintiffs are entitled to declaratory relief under Section 1983…………………34

Conclusion………………………………………………………………....35

**TABLE OF AUTHORITIES**

ii

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1

2

Page(s)

Cases

3

*Alabama Association of Realtors v. United States Department of Health and*
   *Human Services*, __ F.Supp.3d __, 2021 WL 1779282 (D. D.C. May 5, 2021) ....4

4

*Already, LLC v. Nike, I*nc.,
   568 US 85 (2013) ..........................................................................................5

5

*Arkansas Game and Fish Comm'n v. United States*,
   568 U.S. 23 (2012) ...............................................................................10, 11

6

*Armstrong v. United States*,
   364 U.S. 40 (1960) .........................................................................9, 13, 15

7

*Auracle Homes, LLC v. Lamont*,
   478 F. Supp. 3d 199 (D. Conn. 2020) ...................................................21

8

*Babbitt v. Youpee*,
   519 U.S. 234 (1997) .................................................................................17

9

*Baptiste v. Kennealy*,
   490 F. Supp. 3d 353 (D. Mass. 2020) .............................................16, 17

10

*Bronson v. Kinzie*,
   42 U.S. 311 (1843) ............................................................................21, 22

11

*Brooks-Scanlon Corporation v. United States*,
   265 U.S. 106 (1924) ................................................................................13

12

*Cienega Gardens v. United States*,
   331 F.3d 1319 (Fed. Cir. 2003).............................................................13

13

*Coalition to Defend Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012)................................................................6

14

*County of Butler v. Wolf*, 2020 WL 2769105, *4 (W.D. Pa. May 28, 2020)..........16

15

*Crown Point Dev., Inc. v. City of Sun Valley*,
   506 F.3d 851 (9th Cir. 2007)...........................................................30, 34

16

*Cwynar v. City and County of San Francisco*,
   90 Cal. App. 4th 637, 109 Cal.Rptr.2d 233 (Ct. App. 2001) ..........10, 11

17

*De Laval Steam Turbine Co. v. United States*,
   284 U.S. 61 (1931) ..................................................................................14

18

*Duke Power Co. v. Carolina Env'l Study Grp, Inc.,*
   438 U.S. 59 (1978) ............................................................................16, 17

19

*El Papel, LLC v. Inslee*,
   2020 WL 8024348 (W.D. Wash. Dec. 2, 2020).....................................23

20

21

22

23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

*Elmsford Apartment Associates, LLC v. Cuomo*,
   469 F. Supp. 3d 148 (S.D. N.Y. 2020)......................................................19, 20, 26
*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................................5
*Farmers' & Merchants' Bank of Monroe v. Fed. Rsrv. Bank of Richmond*,
   262 U.S. 649 (1923) ..........................................................................................26
*FCC v. Fla. Power Corp*,
   480 U.S. 245 (1987) ........................................................................................7, 8
*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*,
   528 U.S. 167 (2000) ............................................................................................5
*Gen. Motors Corp. v. Rom*ein,
   503 U.S. 181 (1992) ..........................................................................................26
*Goldblatt v. Town of Hempstead*,
   369 U.S. 590 (1962) ..........................................................................................30
*HAPCO v. City of Philadelphia*,
   482 F. Supp. 3d 337..............................................................................16, 20, 21
*Haynes v. State of Wash.*,
   373 U.S. 503 (1963) ..........................................................................................31
*Heath v. Alabama*,
   474 U.S. 82 (1985) ............................................................................................30
*Heights Apartments, LLC v. Walz*,
   ___ F.Supp.3d ___ 2020 WL 7828818 (D. Minn. Dec. 31, 2020) .......................3
*Hendler v. United States*,
   952 F.2d 1364 (Fed. Cir. 1991).....................................................................11, 12
*Hill v. Blind Industries and Services of Maryland*,
   179 F.3d 754 (9th Cir. 1999)...............................................................................7
*Hodel v. Irving*,
   481 U.S. 704 (1987) ..........................................................................................17
*Home Bldg. & Loan Assoc. v. Blaisdell*,
   290 U.S. 398 (1934) ...................................................................................passim
*Kimball Laundry Co. v. United Stat*es,
   338 U.S. 1 (1949) ..............................................................................................12
*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013) ..........................................................................................31
*Lingle v. Chevron U.S.A. I*nc.,
   544 U.S. 528 (2005) ....................................................................................29, 30
*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) ............................................................................7, 8, 10, 11

iv

*Lynch v. Household Finance Corp.*,
    405 U.S. 538 (1972) ...................................................................24
*Lynch v. United States*,
    292 U.S. 571 (1934) ...................................................................13
*MacEwen v. Inslee*,
    No. C20-5423, 2020 WL 4261323 (W.D. Wash. July 24, 2020) ..........6
*Matzger v. Arcade Bldg. & Realty* Co.,
    80 Wash. 401 (1914) ...................................................................14
*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
    499 U.S. 117 (1991) ...................................................................26
*Pennhurst State Sch & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .......................................................................7
*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*,
    467 U.S. 717 (1984) ...................................................................30
*Phillips v. Washington Legal Foundation*,
    524 U.S. 156 (1998) ...................................................................13
*Regional Rail Reorganization Act Cases*,
    419 U.S. 102 (1974) ...................................................................16
*Reiter v. Wall*gren,
    28 Wn.2d 872 (1947)....................................................................6
*Richardson v. City & County of Honolulu*,
    124 F.3d 1150 (9th Cir. 1997)......................................................29
*Rubinovitz v. Rogato*,
    60 F.3d 906 (1st Cir. 1995) .........................................................32
*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ..............................................................15, 16
*Skyworks, Ltd. v. Centers for Disease Control and Prevention*,
    ___ F.Supp.3d ___, 2021 WL 911720 (N.D. Ohio March 10, 2021) .....3
*Spokane School Dist. No. 81 v. Parzybok*,
    96 Wn.2d 95 (1981)................................................................13, 14
*State ex rel. Hartley v. Clausen*,
    146 Wash. 588 (1928) ...................................................................6
*State v. Trask*,
    91 Wn. App. 253 (1998)..............................................................14
*Stop the Beach Renourishment, Inc. v. Florida Dep't of Env'l Prot.*,
    560 U.S. 702 (2010) ..............................................................31, 34
*Sveen v. Melin*,
    ___ U.S. ___, 138 S.Ct. 1815 (2018) ............................................27

v

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

*Terkel v. Centers for Disease Control and Prevention*, ___ F. Supp. 3d ___,
   2021 WL 742877 (E.D. Tex. Feb. 25, 2021) ........................................4
*Tiger Lily, LLC v. United States Department of Housing and Urban Development*,
   992 F.3d 518 (6th Cir. 2021) .....................................................3
*TXO Prod. Corp. v. All. Res. Corp.*,
   509 U.S. 443 (1993) ................................................................30
*United States Trust Co. of N.Y. v. New Jersey*,
   431 U.S. 1 .............................................................................13
*United States v. Petty Motor Co*,
   327 U.S. 372 (1946) ...........................................................12, 13
*United States v. Security Indus. Bank*,
   459 U.S. 70 (1982) ................................................................14
*Washington v. Glucksburg*,
   521 U.S. 702 (1997) ..............................................................31
*Yee v. City of Escondido*,
   503 U.S. 519 (1992) .........................................................8, 9, 10

State Constitutional Provisions

Wash. Const. art. III, § 5 ..........................................................6

Statutes

Wash. Rev. Code § 49.60.030 ....................................................33
Wash. Rev. Code § 59.18.080 ....................................................25
Wash. Rev. Code § 59.18.130 ....................................................25
Wash. Rev. Code § 59.18.280 ....................................................14
Wash. Rev. Code § 59.18.370 ....................................................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1

### INTRODUCTION

2     Plaintiffs file this Opposition to Defendants' Motion for Summary Judgment

3 and Reply in Support of Plaintiffs' Motion for Summary Judgment. Because the

4 arguments are overlapping, Plaintiffs incorporate both documents in one and deal

5 with each issue as they relate to both motions.

6

### STATEMENT OF FACTS

7     Plaintiffs file their own Response to Defendants' Statement of Material Facts not

8 in Dispute and Statement of Disputed Facts.

9

### ARGUMENT

### I
### The Court possesses subject matter jurisdiction.

10

11

12     Defendants' first argument is that the Court lacks subject matter jurisdiction on

13 the bases that Plaintiffs lack standing, that their claims are moot, that the Governor

14 has Eleventh Amendment immunity and the Court cannot enjoin violations of state

15 law. ECF 30, at 26-31.[1] Each is addressed in turn.

16 **A. Plaintiffs have standing.**

17     Defendants' argument that Plaintiffs lack standing argument is based on the idea

18 that the CDC moratorium prohibited evictions and, therefore, Plaintiffs were not

19 harmed by the Proclamations. For three reasons these bases for an argued lack of

20 standing fail.

21     First, Plaintiffs are challenging more than a moratorium on evictions. While

22 Defendants repeatedly characterize this case as being about the eviction moratorium

23

---

[1] Herein, citations to filings use the ECF page numbers at the top of each page.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

and relying on cases from other states where an eviction moratorium was at issue, Plaintiffs are challenging the Proclamations in their entirety. *See* ECF 27 (Amended Complaint). For example, Plaintiffs also challenge the inability to treat unpaid rent accrued during the life of the Proclamations (well over a year) as an enforceable debt unless one can meet an impossible and circular requirement that they offer a repayment plan tailored to personal health and financial details of tenants, who in turn are not required to provide such information and have an obvious incentive not to. The key to ever being able to treat the unpaid rent accrued during the life of the Proclamations as a debt is by its nature illusory. Landlords generally do not know the individual health or economic circumstances of tenants. *See* ECF 23, at 4 ¶ 20.

Defendants acknowledge this reality in dismissive fashion, stating: "The Governor's Office opted not to place the burden of proof on tenants [of showing a Covid-related hardship because] … in many cases, tenants in genuine economic distress due to the pandemic are unable to provide adequate proof of their distress." ECF 31, at 6-7. The Proclamations not only fail to require tenants to establish a hardship, they do not require tenants to communicate with their landlords to fashion a reasonable repayment plan (which ultimately leads to repayment), effectively escaping their debts through silence and evasion. Defendants do not dispute this fact; they instead try to soften it with non-mandatory encouragement to tenants to communicate. *See* ECF 30, at 17-18. If they don't communicate, there is no negative consequence and only a positive one arising from their silence—escape from ever having to pay their past due rent.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    Defendants attempt to discredit Plaintiffs' argument because it is common for

2    landlords to request information about the source of potential tenants' source of

3    income. ECF 30, at 60. But their own argument and very reason for the

4    Proclamations is that the Pandemic has dramatically changed everything. Of course,

5    landlords were aware of employment status of tenants when they applied to become

6    tenants, but they are not aware of the impact of COVID-19 on their tenants' income

7    or their health—both of which are essential to being able to offer a plan and being

8    able to treat unpaid rent as an enforceable debt. The CDC eviction moratorium at

9    least required tenants to certify hardship; the Proclamations do not and thereby

10   impose an impossible barrier to seeking repayment of rent.

11   As recognized in *Heights Apartments, LLC v. Walz,* ___ F.Supp.3d ___ 2020

12   WL 7828818 (D. Minn. Dec. 31, 2020), the CDC moratorium was "narrower" than

13   the Minnesota moratorium; plaintiffs had standing. For instance, the court noted

14   that any violation of any contractual obligations (except the obligation to pay rent)

15   authorized eviction under the CDC moratorium, but not under the state moratorium.

16   The Proclamations do not allow eviction for violation of other contractual terms,

17   *i.e.*, no pets, limited number of people residing, pay utilities, etc. As in *Heights*

18   *Apartments*, the Plaintiffs here have standing.

19   Second, the CDC moratorium has been declared to be invalid in several courts.

20   *See, e.g., Tiger Lily, LLC v. United States Department of Housing and Urban*

21   *Development,* 992 F.3d 518 (6th Cir. 2021); *Skyworks, Ltd. v. Centers for Disease*

22   *Control and Prevention,* ___ F.Supp.3d ___, 2021 WL 911720 (N.D. Ohio March

23   10, 2021); *Terkel v. Centers for Disease Control and Prevention*, ___ F. Supp. 3d

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    ___, 2021 WL 742877 (E.D. Tex. Feb. 25, 2021); *Alabama Association of Realtors*

2    *v. United States Department of Health and Human Services*, __ F.Supp.3d __, WL

3    1779282 (D. D.C. May 5, 2021). It cannot equate to no standing.

4        Third, the CDC moratorium requires a specific declaration by tenants who "must

5    provide a copy" to their landlords. https://www.federalregister.gov/

6    documents/2020/09/04/ 2020-19654/temporary-halt-in-residential-evictions-to-

7    prevent-the-further-spread-of-covid-19#footnote-5-p55293. No tenant of Plaintiffs

8    has filed such a declaration. *See* Reply Statement of Material Facts Not in Dispute

9    and Statement of Disputed Material Facts, and declarations cited therein. The CDC

10   moratorium is not what constrains Plaintiffs; they have standing to challenge the

11   Proclamations.

12   **B. Plaintiffs' Claims are not Moot.**

13       Defendants argue that Plaintiffs' claims are "imminently moot" because the

14   Proclamations end of June 30, 2021. ECF 30, at 28. But the inability to treat rent as

15   an enforceable debt for the time period of the Proclamation continues, even if

16   people can obtain rent beginning on July 1, 2021 for post-Proclamation time

17   periods. The new statute on which Defendants rely states that the **eviction**

18   **moratorium** ends on June 30 and provides for repayment plans in Section 4, but

19   the remedy to the property owner if tenant defaults under a repayment plan is apply

20   for reimbursement from the state (with no guarantees of it being available) or

21   proceed with an unlawful detainer. Section 4 (2). The new law says fails to revoke

22   the prohibition on treating unpaid rent (or fees) as an enforceable debt.

23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1   Defendants are essentially arguing that the case will be moot because one of

2   their co-equal branches of government ended the moratorium. "[A] defendant

3   cannot automatically moot a case simply by ending is unlawful conduct once sued."

4   *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Given this

5   concern, our cases have explained that 'a defendant claiming that its voluntary

6   compliance moots a case bears the **formidable burden** of showing that it is

7   **absolutely clear** the allegedly wrongful behavior could not reasonably be expected

8   to recur.'" *Already, LLC v. Nike, Inc.*, 568 US 85, 91 (2013) (quoting *Friends of the*

9   *Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000)

10  (emphasis added)). Defendants do not even attempt to meet this burden. Given the

11  uncertain nature of the corona virus and its variants and the extent to which

12  Defendants defend the Proclamations, the Court should not assume that Defendants

13  are promising never to enforce a Proclamation like the ones at issue. Because

14  Defendants cannot meet the high burden of proving a Proclamation will never

15  recur, this case is not moot and the Court should decide the issues presented.

16  **C. Eleventh Amendment immunity does not preclude this action.**

17  Defendants argue that the Governor has Eleventh Amendment immunity, but do

18  not make this argument in regard to the Attorney General. And for good reason. *Ex*

19  *parte Young,* 209 U.S. 123, 157 (1908), allows federal court jurisdiction over state

20  officials whose responsibility it is to enforce the challenged law. "The Eleventh

21  Amendment …does not, however, bar actions for prospective declaratory or

22  injunctive relief against state officers in their official capacities for their alleged

23

Plaintiffs' Opp. to Ds' Mot. For SJ and Reply in Support
of Ps' Mot. For SJ
No. 1:20-cv-03182-SAB    - 5

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

violations of federal law." *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133-34 (9th Cir. 2012).

The Governor was sued because the Proclamations challenged herein were issued by him alone. It appeared that he would have an interest in the legality of his own Proclamations. Moreover, under the Washington Constitution, the Governor has enforcement obligations as well. Wash. Const. art. III, § 5 provides that the Governor "shall see that the laws are faithfully executed." The Washington Supreme Court has recognized this as an enforcement duty. "[I]t is the right and duty of the executive department to see that the laws as thus interpreted are properly **enforced…. [T]he final determinations as to [the law's] enforcement and execution [is] lodged in the Governor."** *State ex rel. Hartley v. Clausen*, 146 Wash. 588 (1928), *quoted in Reiter v. Wallgren*, 28 Wn.2d 872, 881 (1947) (emphasis added). The notion that the Governor has no enforcement authority is contrary to Washington law.[2] He should not be cloaked with Eleventh Amendment immunity as provided in *Ex Parte Young*.

---

[2] Plaintiffs recognize that the Court dismissed the Governor in *MacEwen v. Inslee,* No. C20-5423, 2020 WL 4261323, at *2 (W.D. Wash. July 24, 2020), *cited in* Dkt. 30, at 30, on the assumption that the Governor did not have enforcement authority. Plaintiffs are unaware of what citations to Washington law were even made in that case and the Court should not impose an erroneous conclusion on Plaintiffs here.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

D. **The Court can dismiss the Third Claim for Relief which asserts a state law claim.**

Defendants contend that a federal court lacks jurisdiction to enjoin a state official's actions on the basis of violation of state law. ECF 30, at 30 (citing *Pennhurst State Sch & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). This is a defense which the state can waive. *See generally, Hill v. Blind Industries and Services of Maryland,*179 F.3d 754 (9th Cir. 1999). Having not waived the defense, Plaintiffs agree that the Third Claim for Relief in the First Amended Complaint (ECF 27) may be dismissed based on Eleventh Amendment immunity grounds.

## II
### The Proclamations Cause a Taking of Property Covered by the Fifth Amendment to the United States Constitution

A. **The Proclamations mandate a continued physical occupation of Plaintiffs' properties.**

Given the undisputed fact that the Proclamations were intended and do require Plaintiffs to endure someone residing on their property who is not paying rent or complying with any contractual or statutory obligation in the landlord tenant relationship, Defendants nevertheless argue that there is no physical occupation which requires payment of just compensation simply because the physical occupation is not "permanent." ECF 30, at 32 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). The Court has never held that physical occupations less than "permanent" do not constitute physical takings.

Defendants also rely on *FCC v. Fla. Power Corp*, 480 U.S. 245, 252 (1987) for the notion that "statutes regulating the economic relations of landlords and tenants

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

are not *per se* takings." *Id.* Of course, a statute regulating economic relations are not necessarily *per se* takings, such as a law requiring landlords to give tenants an explanation of the use of deposits for damages or return deposits under a certain deadline.[3] But the Court in *Loretto* was not stating, as Defendants imply, that **any** economic regulation of landlords can never be a *per se* taking, such as a mandate that property owners allow others to reside in their property for extended periods without paying rent. The Court in *Loretto* specifically addressed this: "[A] landlord's **ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation**." *Loretto*, 458 U.S., at 439, n. 17 (emphasis added). This is precisely what has occurred here.

Defendants next pivot to *Yee v. City of Escondido*, 503 U.S. 519 (1992). ECF 30, at 33. In *Yee*, landlords argued that they were subjected to a physical occupation of their rental properties when the City regulated rental prices. Defendants here quote the portion of the Court's decision describing the *Yee* plaintiffs' argument about being unable to evict; the Court did not find that to be necessarily true when reviewing the ordinance on its face. "On the face of the regulatory scheme, neither the city nor the State compels petitioners, once they have rented their property to

_____

[3] The Court in *Loretto* explained the type of injuries that do not require compensation—requiring "landlords to comply with building codes and provide utility connections, mailboxes, smoke detectors, fire extinguishers, and the like." *Loretto,* 458 U.S. at 440. None of these are analogous to requiring tenants to remain in possession of property while paying nothing.

Plaintiffs' Opp. to Ds' Mot. For SJ and Reply in Support of Ps' Mot. For SJ
No. 1:20-cv-03182-SAB    - 8

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

tenants, to continue doing so." *Id.* at 527-28. The city ordinance did not require the tenants' continued occupation with there was "nonpayment of rent." *Id.* at 524.

*Yee* was basically a facial challenge to a price control and the Court naturally found that price controls did not compel occupation of property. The plaintiffs in *Yee* chose to have tenants under certain lease arrangements, including the payment of rent. The city ordinance was basically a price control allowing owners to receive rent, but not necessarily allowing increases in rent that they might otherwise want.

The present situation is quite different. Defendants mandate that Plaintiffs continue with the physical occupation of their property by people who pay no rent whatsoever. Continued physical occupation is mandated. While that result may be an appropriate response to the Pandemic, the takings clause of Fifth Amendment does not prohibit the taking of property, it just requires payment of just compensation so that the burden of meeting this public need is shouldered by the public and not just those who are providing rental housing. *See Armstrong v. United States*, 364 U.S. 40, 49 (1960).

Defendants later attempt to discredit Plaintiffs for employing a "mishmash" of regulatory taking and physical taking jurisprudence. ECF 30, at 36. But that is exactly what the Proclamations involve—a regulation which mandates the continuation of a physical occupation. This is somewhat different from physical invasion cases where the government simply causes the invasion, as in flooding cases. This is a mix of the two types, and there is no reason that a physical occupation foisted on property owners or that a physical occupation mandated by a regulation that prohibits removal of the physical occupation should be treated

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

differently. It is similar to *Loretto*, where the City ordinance mandated a physical invasion—it was a *per se* taking. 458 U.S. 419. The Supreme Court in *Yee* explained the supposed mishmash arising from taking by regulation of use and *per se* takings arising from physical invasion. "They are, rather, separate arguments in support of a single claim—that the ordinance effects an unconstitutional taking." 503 U.S. at 535.

Governmental actions which take property interests from owners do not always fall into neat little boxes. As Justice Ginsburg explained in *Arkansas Game and Fish Comm'n v. United States*, 568 U.S. 23 (2012):

> [N]o magic formula enables a court to judge, in every case, whether a given government interference with property is a taking. In view of the nearly infinite variety of ways in which government actions or regulations can affect property interests, the Court has recognized few invariable rules in this area.

*Id*. at 31.

A California case explains *Yee* in the context of mandated physical occupation—*Cwynar v. City and County of San Francisco*, 90 Cal. App. 4th 637, 109 Cal.Rptr.2d 233 (Ct. App. 2001). In *Cwynar,* a city ordinance prohibited evictions even though payment of rent was still required. "*Yee* addressed a narrow issue—a facial challenge to a purely economic rent control law." *Id.* at 657.

> *Yee* does not support the proposition that the option of leaving the rental market altogether is a cure-all mechanism for government coercion. The City overlooks the fact that the challenged statute in *Yee* was a purely economic price control. In that context, the fact that the *Yee* plaintiffs voluntarily rented

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    their property necessarily established there was no government-authorized
2    physical occupation.

3    *Id.* at 657. Unlike the plaintiffs in *Yee*, Plaintiffs here are not asserting a right to
4    increase rent, but to receive rent from occupants of their property.

5    Defendants also take issue with *Arkansas Game and Fish Comm'*n, on the basis
6    that it "did not hold that a temporary occupation of property constitutes a
7    categorical taking." ECF 30, at 35. Nevertheless, the Court ruled that "if
8    government action would qualify as a taking when permanently continued,
9    temporary actions of the same character may also qualify as a taking." 568 U.S. at
10    26. The point is that the temporary nature of the taking does not exclude it from the
11    protection of the Fifth Amendment. And it is beyond dispute that a physical
12    occupation is a *per se* or categorical taking. *Loretto,* 458 U.S at 435.

13    Defendants also try to distinguish *Hendler v. United States,* 952 F.2d 1364 (Fed.
14    Cir. 1991), on the basis that the concrete wells sunk on the plaintiff's property were
15    "permanent," apparently because they were made of concrete. But that ignores both
16    the reasoning and facts of the case. The trial court wanted more evidence to know
17    whether the wells were "truly permanently affixed to plaintiffs' property," but the
18    Federal Circuit explained that the focus on permanence "misperceives the thrust of
19    the protections afforded by the Fifth Amendment." *Id*. at 1375.

20    In this context, 'permanent' does not mean forever, or anything like it. A
21    taking can be for a limited term—what is 'taken' is, in the language of real
22    property law, an estate for years, that is, a term of finite duration as distinct
     from the infinite term of an estate in fee simple absolute. (While called an

23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1
2

> estate for years, the term can be for less than a year. *See generally* Cribbet,
> Principles of the Law of Property 54 (3d ed. 1989).)

3

*Hendler*, 952 F.2d at 1376 (thereafter addressing several Supreme Court decisions

4

where the United States took property for a period of time and the property owners

5

were paid a fair rental value).

6
7

> All takings are 'temporary,' in the sense that the government can always
> change its mind at a later time, and this is true whether the property interest
> taken is a possessory estate for years or a fee simple acquired through
> condemnation, or an easement of use by virtue of a regulation. …

8
9
10
11

> If the term 'temporary' has any real world reference in takings
> jurisprudence, it logically refers to those governmental activities which
> involve an occupancy that is **transient and relatively inconsequential**, and
> thus properly can be viewed as no more than a common law trespass *quare
> clausum fregit*. **Our truckdriver parking on someone's vacant land to eat
> lunch is an example.**

12
13

*Id*. at 1376-77 (emphasis added).

14

Defendants claim that Plaintiffs' "pre-*Yee*" cases, cases relied upon by *Hendler,*

15

"miss the mark," but Defendants miss the point. ECF 30, at 36. *Kimball Laundry*

16

*Co. v. United States*, 338 U.S. 1 (1949) and *United States v. Petty Motor Co,* 327

17

U.S. 372 (1946) [4] were cited for the undebatable assertion that a temporary taking of

18

property (as in a temporary leasehold) requires payment of just compensation. *See*

19

ECF 22, at 8, 11. Nothing in *Yee,* or any price control case, changes that rule.

20

**B. The Proclamations take Plaintiffs' property rights in their contracts.**

21

Defendants argue that "[p]hysical takings do not apply to interests in rental

22

agreements." ECF 30, at 36. The takings clause requires compensation for the

23

---

[4] Plaintiffs apologize for an incomplete citation to *Petty Motor* in ECF 22, at 11.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

taking of contract rights regardless of whether it is denominated a "physical taking"

or a "regulatory taking." But Defendants create a straw man to defeat Plaintiffs'

argument. Defendants assert that *Cienega Gardens v. United States*, 331 F.3d 1319

(Fed. Cir. 2003) is "out of place" because it "involved a regulatory takings claim,

not a physical one." ECF 30, at 36. Plaintiffs never described their taking of

contractual interests as a physical taking. While *Cienega Gardens* involved the

taking of contract rights in contracts with the federal government, the Fifth

Amendment protection of contract rights is not limited to contracts to which the

government is a party as Defendants argue. *See Armstrong,* 364 U.S. 40 (taking of

materialmen liens which were contracts with nongovernmental entity); *Brooks-*

*Scanlon Corporation v. United States,* 265 U.S. 106 (1924) (taking of contract with

shipbuilder);

Defendants make no attempt to distinguish the other Supreme Court decisions

cited by Plaintiffs that make this clear, such as *Lynch v. United States*, 292 U.S. 571

(1934); *Petty Motor Co*., 327 U.S. 372 and *United States Trust Co. of N.Y. v. New*

*Jersey,* 431 U.S. 1, 19 n. 16 (1977), *cited in* ECF 22, at 11.

And, since the Fifth Amendment protects property interests recognized under

state law (*Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998)), it is

important that Washington law is unmistakable that contractual rights are property

rights which can be taken by governmental action. *See, e.g., Spokane School Dist.*

*No. 81 v. Parzybok*, 96 Wn.2d 95,104 (1981). Defendants assert that *Parzybok* does

not remotely stand for the proposition that "rental income constitutes a property

right" (ECF 30, at 41), but it does stand for the proposition that income from a

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

contract is a property right. *Id.* For over a century, Washington has recognized that leases are contracts. *See, e.g., Matzger v. Arcade Bldg. & Realty Co.*, 80 Wash. 401 (1914). Contractual rights certainly include leasehold interests which in turn constitute property. *See State v. Trask,* 91 Wn. App. 253 (1998). Defendants provide no compelling argument that a lease is somehow not a contract.

### C. The Proclamations take Plaintiffs' interests in security deposits and give them to tenants without providing security to Plaintiffs.

Plaintiffs have a property interest in their tenants' security deposits even if the deposits are returned to the tenant at the end of a lease when there is no need to tap into those deposits. Washington cases demonstrate the nature of security deposits. For instance, in *United States v. Security Indus. Bank*, 459 U.S. 70 (1982) (amendment to bankruptcy code to invalidate liens held not to be retroactive because retroactivity would destroy property rights); *De Laval Steam Turbine Co. v. United States*, 284 U.S. 61 (1931) (taking of contract rights to produce steam turbines). And as addressed in ECF 22, at 14, *Armstrong* involved the taking of a lien, which is like a security deposit.

The security deposits are funds in which the landlord and tenant both retain an interest. The Proclamations require the owner to relinquish all of his or her interests in the deposit related to unpaid rent. That fact is not disputed. Whether this is a taking of the money, which is protected under the Fifth Amendment, or the taking of contract right makes little difference. It is a taking nonetheless. Finally, although Defendants state that the security deposits are property of the tenant, citing RCW 59.18.280, that statute does not negate any interest the lessor has in the deposit.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

ECF 30, at 38. The Proclamations now claim that the deposit cannot be for the payment of unpaid rent even though the contracts say otherwise.

Defendants' attempt to distinguish *Armstrong* is unpersuasive. In *Armstrong*, the government bought property encumbered with liens and then claimed the liens couldn't be enforced. 364 U.S. at 46. Defendants' claim that "[c]ritically, the federal government took title to the underlying property at issue" is not as critical as they assert. ECF 30, at 38 (citing *Armstrong*, 364 U.S. at 43-44). Although it explained the events which caused the taking of the lienholder's liens, there was no claim or dispute regarding the underlying property. The taking claim was successfully made by the party who had the security interest in the property when that security interest was destroyed. *Id.* That is the same result of the prohibition on using a security deposit to recover unpaid rent. The result is that tenants who chose to leave and have the wherewithal to move and find a new residence now get their security deposit back entirely and the owner of the property they have been using for free for months gets nothing.

**D. Declaratory relief is available for the Fifth Amendment claim.**

Defendants argue that "equitable remedies" are not available, but then obliterate the distinction between injunctive and declaratory relief. Plaintiffs agree that they cannot get injunctive relief prohibiting the continuation of the Proclamations under the Fifth Amendment because the taking of property is not a violation of the Fifth Amendment. Logically, a legal act cannot be enjoined. The Fifth Amendment simply requires that just compensation is eventually paid. *See Ruckelshaus v.*

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    *Monsanto Co.*, 467 U.S. 986, 1016 (1984). There is nothing to enjoin. *See, e.g.,*

2    *Regional Rail Reorganization Act Case*s, 419 U.S. 102, 124–125 (1974).

3        But Defendants argue that declaratory relief is not available by citing three

4    district court cases that suggest that declaratory relief would be tantamount to an

5    injunction and injunctions are not authorized. ECF 30, at 39 (citing *Baptiste v.*

6    *Kennealy*, 490 F. Supp. 3d 353, 391 (D. Mass. 2020); *County of Butler v. Wolf*,

7    2020 WL 2769105, *4 (W.D. Pa. May 28, 2020); *HAPCO v. City of Philadelphia*,

8    482 F. Supp. 3d 337, 358 & n. 112 (E.D. Pa. 2020)). While there may be unique

9    reasons declaratory relief was not granted in these cases based on the relief sought,

10   or the argument and authorities presented to the courts in those cases, the Supreme

11   Court is clear that declaratory relief is appropriate to determine whether a taking

12   has occurred. The issue of the amount of just compensation may be determined by

13   the parties or a court if necessary.

14       *Ruckelshaus*, a case involving mandatory disclosure of trade secrets, is a clear

15   example. The Court concluded that there was no taking of trade secret data

16   submitted to the Environmental Protection Agency after amendments to the

17   governing statute in 1978. 467 U.S. at 1006. But for a different time period, a taking

18   would occur. "EPA consideration or disclosure of health, safety, and environmental

19   data will constitute a taking if Monsanto submitted the data to EPA between

20   October 22, 1972, and September 30, 1978." *Id.* at 1013.[5]

---

21   [5] *Duke Power Co. v. Carolina Env'l Study Grp, Inc.,* 438 U.S. 59 (1978), expresses

22   the same concept. The Declaratory Judgment Act "allows individuals threatened

23   with a taking to seek a declaration of the constitutionality of the disputed

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    But the District Court authorities Defendants cite are not persuasive because

2    they all rely on one case that provides no explanation for its conclusion. *Baptiste*

3    merely cites *Wolf* for the notion that declaratory relief would be the functional

4    equivalent of an injunction, with no other analysis whatsoever. *Baptiste*, 490 F.

5    Supp.3d at 391 (citing *Wolf*, 2020 WL 2769104, *4). And *Wolf* just asserts that

6    declaratory relief is the functional equivalent of an injunction without any analysis

7    either. *Id.* Like *Batiste, HAPCO* relies on nothing other than the conclusion in *Wolf.*

8    In the present case, that is simply not true. A declaration here that the State may

9    continue what it is doing so long as it eventually pays just compensation is not the

10    functional equivalent of an injunction prohibiting the state's action. Quite the

11    opposite, in fact.

12    In sum, Plaintiffs here seek a declaration under the Fifth Amendment that their

13    property interests have been taken. The declaration sought cannot be the functional

14    equivalent of an injunction because it would enjoin no activity of Defendants. The

15    Fifth Amendment does not prohibit the taking of property, so the Proclamations

16    may continue or be reinstated. But the constitutional uncertainty of whether a taking

17    has occurred should be resolved.

18

19

20

21    governmental action before potentially uncompensable damages are sustained."

22    *Duke Power*, 438 U.S. at 71, n. 15; *see also Babbitt v. Youpee*, 519 U.S. 234

23    (1997); *Hodel v. Irving*, 481 U.S. 704, 716-18 (1987).

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

## IV
## The Proclamations violate the Commerce Clause

Defendants begin with their defense by referring to what other courts have done with other eviction moratoria and to the district court decision in *El Papel, LLC v. Inslee*, 2020 WL 8024348 (W.D. Wash. Dec. 2, 2020), which denied a preliminary injunction and did not rule on the merits on summary judgment or after trial. Plaintiffs contend that the most analogous authority is the Supreme Court decision in *Home Bldg. & Loan Assoc. v. Blaisdell*, 290 U.S. 398 (1934), and the cases it relies upon, which Defendants agree is the leading case in modern Contract Clause interpretation. ECF 30, at 43.

In *Blaisdell*, the Court upheld a moratorium on foreclosure of mortgages due to economic conditions during the Great Depression. 290 U.S. 398. Importantly, the Court relied on three eviction cases arising out of New York. *Id.* at 440. Defendants have no response to these cases—all of which recognize that a moratorium on evictions was appropriate as long as the tenants were willing and able to pay a fair rent. *See* ECF 22, at 25-2. *Blaisdell,* and the cases on which it is based, require the conclusion that the protection of contractual rights is violated when the government bans evictions for nonpayment of rent and effectively prohibits the property owners from treating the unpaid rent as an enforceable debt.

### A. The Proclamations as a whole undermine the contractual bargain.

The essence of the contractual bargain at issue is that tenants may live in residential property owned by Plaintiffs on the condition that they pay rent regularly, pay fees when their rent payment is late, post a deposit to cover damages

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

they may cause and cover unpaid rent, and comply with rules related to protection of the property and/or other tenants or the neighborhood. The Proclamations undermine this contractual bargain by telling tenants that they cannot be evicted— even for nonpayment of rent—and that any nonpayment of rent can never be treated as an enforceable debt so long as the tenants do not give the property owner information about their financial, health or other circumstances. Under these new rules, the contractual bargain is completely upended.

Curiously, Defendants argue that the Court in *Blaisdell,*

> recognized that contractual obligations may be "impaired by a law which renders them invalid, or releases or extinguishes them[,]" such as a "state insolvent law" that wholly "discharge[s] the debtor from liability" for preexisting debts.

ECF 30, at 43 (quoting *Blaisdell*, 290 U.S. at 431). It is not clear whether Defendants are suggesting that the Court's use of the word "may" suggests that such results are permissible or that such results are possible. But lest there by any uncertainty, the Court's conclusion was that a law discharging a debtor from liability is 'invalid." *Id.*

However, in applying this conclusion, Defendants argue that the "same is true of the Moratorium here," not by looking at what is challenged in this case, but by referring to eviction moratoria in other locations, such as New York, Philadelphia and Connecticut. ECF 30, at 44. Notably, all of these out of state cases addressed eviction moratoria that simply postpone evictions. None dealt with a blanket prohibition on treating unpaid rent as an enforceable debt.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    The New York City eviction moratorium at issue in *Elmsford Apartment*

2    *Associates, LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D. N.Y. 2020),

3    > temporarily permits tenants to apply their security deposit funds to rents due
     and owing—**provided the tenants replenish those funds at a later date**—
4    > and temporarily prohibits landlords from initiating eviction proceedings
     against tenants who are **facing financial hardship due to the pandemic.**
5

6    *Id.* at 155 (emphasis added). The Proclamations at issue here do not allow landlords

7    to apply a security deposit to unpaid rent, but must, as Plaintiff Jevons has, return

8    the deposit when a tenant is ready to move on even if rent remains unpaid. ECF 23,

9    at 3. This is undisputed. *See* ECF 31. And, as addressed above, the eviction

10   moratorium applies to every tenant and not just those facing financial hardship due

11   to the pandemic.

12       Furthermore, the *Elmsford* court found it significant that the New York eviction

13   moratorium did not prohibit eviction if there was an "unauthorized sublease" or if

14   the tenant "overstays their agreed lease term." *Id.* at 159. And particularly

15   noticeable is the fact that the New York eviction moratorium does not suspend "the

16   landlords' right to initiate a common law breach of contract action in the New York

17   State Supreme Court [the trial court] to redress a tenant's failure to perform its

18   payment obligations under his or her lease." *Id.* All of this is prohibited in

19   Washington. The very reasons the New York moratorium was upheld are reasons

20   the Proclamations at issue here should be held to violate the Commerce Clause.

21       Similarly, the Court in *HAPCO* was not resolving the merits but merely denying

22   a preliminary injunction; nevertheless, it also involved an eviction moratorium with

23   differences pertinent to the present case. 482 F. Supp.3d at 35. The eviction

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

Plaintiffs' Opp. to Ds' Mot. For SJ and Reply in Support
of Ps' Mot. For SJ
No. 1:20-cv-03182-SAB    - 20

1  moratorium in *HAPCO* applied only until a landlord and tenant went through

2  mediation.

> Once the [mediation] program is implemented, the bill provides that "no landlord shall take steps in furtherance of recovering possession of a residential property occupied by a tenant who has suffered a COVID-19 financial hardship" without participating in a conciliation conference.

6  *Id.* at 346.[6] The Philadelphia law also allowed tenants to pay their unpaid rent over

7  a nine month period to avoid eviction. *Id.* at 347. These are critically distinguishing

8  facts from the Proclamations. The burdens Plaintiffs' suffer would be substantially

9  less under the rules in Philadelphia, but the Washington Proclamations are at issue

10  here. The conclusions in *HAPCO* about far more reasonable protection of COVID-

11  19-affected tenants does not support the legality of the Proclamations.

12  Defendants' reliance on *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199

13  (D. Conn. 2020) fares no better. ECF 30, at 44. Similar to *HAPCO,* the decision in

14  *Auracle Homes* is also the denial of a preliminary injunction—an extraordinary

15  remedy. 478 F. Supp. 3d at 217. The executive orders challenged in *Auracle Homes*

16  prohibited eviction proceedings, created an automatic 60 day grace period for rent

17  payment, and allowed tenants to use security deposits for unpaid rent if that tenant

18  has sustained a significant loss in revenue. *Id.* at 209-10. These are far less

19  burdensome than what is at issue in the Proclamations at issue herein.

20

---

21  [6] Renters were entitled to a rebuttable presumption of experiencing a COVID-19

22  related financial hardship "by submitting a certification of hardship." *Id.* at 347.  In

23  Washington, tenants do not have to certify anything.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    Defendants next distinguish *Bronson v. Kinzie*, 42 U.S. 311 (1843), on the same

2  basis that it was distinguished in *Blaisdell* (ECF 30, at 45), that contractual

3  remedies can to some degree be altered. *Bronson* and *Blaisdell* both recognize that

4  the state may adjust contractual remedies, but the question under this point is

5  whether the Proclamations' adjustments constitute a significant impairment.

6    As the Court in *Bronson* stated,

7    Whatever belongs merely to the remedy may be altered according to the will
     of the state, **provided the alteration does not impair the obligation of the**
8    **contract.** But if that effect is produced, it is immaterial whether it is done by
     acting on the remedy or directly on the contract itself. In either case it is
9    prohibited by the Constitution.

10 *Bronson,* 42 U.S. at 315-16 (emphasis added).

11    Importantly, *Blaisdell* did not overrule *Bronson*. Rather, the *Blaisdell* court

12 distinguished it on the following basis: "the extension of the period of redemption

13 was unconditional, and there was no provision, **as in the instant case,** to secure to

14 the mortgagee the **rental value of the property during the extended period.**"

15 *Blaisdell,* 290 U.S. at 432 (emphasis added). When applied to the Proclamations,

16 the moratorium on evictions is unconditional—one need not assert, let alone

17 provide any evidence, that the tenant has a Covid-19 related hardship or any

18 hardship at all and there is no security in receiving the rental value. The

19 Proclamations do not require any payment by tenants whatsoever or that tenants

20 communicate with their landlords.

21    Defendants take issue with Plaintiffs' position that *Blaisdell* and the cases it

22 relies upon involved statutes which required the possessor of the property to pay

23 fair rent.  ECF 30, at 46. These cases indeed secured the payment of fair rent, even

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    if payment was not "contemporaneous" as Defendants assert. ECF 30, at 46. And

2    Defendants also assert there were "other factors" at play which do not exist with the

3    Proclamations, but these other factors further undercut Defendants' argument.

> 4    [M]any essential contractual obligations remained intact, e.g., "the integrity
> of the mortgage indebtedness [was] not impaired" and "the validity of the
> 5    sale and the right of the mortgagee-purchaser to title obtain a deficiency …
> [were] maintained.
> 6

7    ECF 30 at 46 (quoting *Blaisdell,* 290 U.S at 445-46). But those "essential"

8    contractual obligations do not remain intact with the Proclamations. Plaintiffs' right

9    to collect debt is completely impaired. Plaintiffs cannot treat unpaid rent that

10   accrued during the time period covered by the Proclamations as enforceable debt.

11        The Court in *El Papel* made different conclusions about the effect of the

12   Proclamations, perhaps based on the particular arguments made in that case.

13   Defendants cite the *El Papel* court's conclusion that the law in *Blaisdell* did not

14   "guarantee a monthly rent payment. Instead, it was up to a court to set the time and

15   manner of repayment." ECF 30, at 46 (quoting *El Papel*, 2020 WL 8024348, at *7).

16   Of course, having a court make similar determinations for Plaintiffs is absolutely

17   prohibited—they cannot ask any court for a determination of how much a tenant

18   owes or how it will be repaid. Those absent provisions—if present here—might

19   have avoided the contracts clause problem that now exists.

20        Recognizing that the Proclamations do not require payment of rent, Defendants

21   suggest that the allocation of dollars during the course of the pandemic to landlords

22   and tenants eliminates the problem. ECF 30, at 46. The problem with this argument

23   is twofold. First, the moneys available require the tenant to apply for the funds.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1  Some tenants do not want to be bothered because there is no consequence to them if

2  rent is not paid.

3       Second, an allocation of dollars generally ignores that the constitutional rights at

4  stake in this lawsuit are personal rights.

5       Property does not have rights. People have rights. The right to enjoy property
         without unlawful deprivation, no less than the right to speak or the right to
6        travel, is in truth, a 'personal' right, whether the 'property' in question be a
         welfare check, a home, or a savings account. In fact, a fundamental
7        interdependence exists between the personal right to liberty and the personal
         right in property. Neither could have meaning without the other.
8

9  *Lynch v. Household Finance Corp.*, 405 U.S. 538, 552 (1972) (citations omitted).

10      That money is available generally does not ensure that Plaintiffs' rights are not

11 violated. Only a court order that Plaintiffs' cannot be required to bear the financial

12 burdens of the Pandemic which should be borne by the public as a whole will their

13 rights be protected.

14      Finally, Defendants accuse Plaintiffs of misconstruing the Proclamations as

15 preventing Plaintiffs "from treating unpaid rent as an enforceable debt and bringing

16 a breach-of-contract action." ECF 30, at 47 (quoting ECF 22, at 28). Plaintiffs are

17 not contending that the Proclamations prohibit the treatment of **any** unpaid rent as

18 an enforceable debt, but Plaintiffs cannot treat as debt that unpaid rent from

19 February 9, 2020 to June 30, 2021. Unpaid rent during that time period is lost

20 forever. Again, the only way to be able to treat that as debt is if Plaintiffs are able to

21 offer a repayment plan that is tailored to the personal health and financial

22 circumstances of the tenant, which the Plaintiffs do not, nor are ever likely, to

23 know. ECF 23, at 4.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

**B. The Proclamations impair reasonable expectations.**

Defendants argue that Plaintiffs should have no reasonable expectation of being able to evict or treat unpaid rent as an enforceable debt because landlord/tenant regulations are heavily regulated. ECF 30, at 47. While the Residential Landlord-Tenant Act (RLTA), Chapter 59.18 RCW, regulates many aspects of landlord/tenant relations, the question is whether the RLTA should have put lessors on notice and anticipated that they might not be able to initiate eviction proceedings when tenants fail to pay rent and not be able to treat a failure to pay rent for over a year unless the lessor knows the details of the tenants' health and financial circumstances? Nothing suggests that the Pandemic, or the Proclamations, should have been anticipated at the time Plaintiffs entered into their lease agreements.[7]

Several courts have recognized as much. *See HAPCO*, 482 F. Supp.3d at 351 ("Of course, when landlords entered into leases before the [eviction moratorium] was passed, they did not expect that these specific regulations would be enacted in response to a global pandemic."); <u>Baptiste</u>, 490 F. Supp. 3d at 384 ("the court finds that a reasonable landlord would not have anticipated a virtually unprecedented event such as the COVID-19 pandemic that would generate a ban on even initiating eviction actions against tenants who do not pay rent and on replacing them with

---

[7] In fact, the RLTA makes payment of rent the paramount duty of all tenants. *See* Wash. Rev. Code § 59.18.130  ("Each tenant shall pay the rental amount at such times and in such amounts as provided for in the rental agreement."); Wash. Rev. Code § 59.18.080 (payment of rent condition to tenant's exercising statutory remedies).

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1  tenants who do pay rent."). The notion that the consequences of the COVID-19

2  pandemic were foreseeable or something other than wholly unexpected action has

3  no basis in reality.

4      Defendants then assert that Plaintiffs' contracts do not reference eviction as a

5  consequence for failing to pay rent. ECF 30, at 48. But the contracts do. *See* Exhibit

6  A, at 8 to ECF 26 (Jevons Decl.) (indicating suit for possession as a result of failure

7  to pay rent); Exhibit A to ECF 25 (Burgstaller) "All Sections of the Landlord

8  Tenant Act of the state of Washington, RCW 59.18, shall apply to this contract."

9  Wash. Rev. Code § 59.18.370 specifically authorizes restoration of possession by

10  the owner. "A contract depends on a regime of common and statutory law for its

11  effectiveness and enforcement." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers*

12  *Ass'n*, 499 U.S. 117, 129-30 (1991). Therefore, "[l]aws which subsist at the time

13  and place of the making of a contract, and where it is to be performed, enter into

14  and form a part of it, as fully as if they had been expressly referred to or

15  incorporated in its terms." *Farmers' & Merchants' Bank of Monroe v. Fed. Rsrv.*

16  *Bank of Richmond*, 262 U.S. 649, 660 (1923). "This principle embraces alike those

17  laws which affect its construction and those which affect its enforcement or

18  discharge." *Id.*

19      In sum, Defendants cite *Elmsford,* 469 F. Supp. 3d at 172 for the proposition that

20  Contracts Clause issues arise only when the "'laws affect the validity, construction

21  and enforcement of contracts.'" *Id.* (quoting *Gen. Motors Corp. v. Romein,* 503

22  U.S. 181, 189 (1992). As addressed above, the Proclamations clearly impair the

23  enforcement of Plaintiffs' leases with their tenants, which are contracts.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

**C. The Proclamations hinder Plaintiffs' ability to safeguard their rights.**

Defendants cite *Sveen v. Melin,* ___ U.S. ___, 138 S.Ct. 1815, 1822 (2018), as if it was declaring a universal truth that "a law impairing contractual remedies without nullifying them does not "prevent[] the party from safeguarding or reinstating [their] rights." ECF 30, at 29. Of course that is not universally true; it is possible for a law to impair contractual remedies without nullifying them, while also preventing a party from safeguarding or reinstating their rights. And that is what has occurred here. At some unknown time, Plaintiffs may be able to regain possession of their property, but they cannot safeguard or reinstate their rights to unpaid rent (or late fees) from March 2020 to the end of June 2021. Unlike the moratorium eviction in *Auracle Homes*, tenants here are not bound to their contracts. All they have to do is fail to give Plaintiffs information about their health or financial circumstances and they will never have to pay the unpaid rent from March 2020 to the end of June.

**D. The Proclamations do not advance their significant public purpose in an appropriate and reasonable manner.**

Defendants argue that the moratorium advances a significant public purpose in an appropriate and reasonable way solely because it is temporary, prevents economic dislocation and slows the spread of disease. ECF 30, at 50.

The eviction moratorium may have been the result of good intentions. But the prohibition on treating unpaid rent as an enforceable debt which would allow recovery of the debt even if tenants with Covid-19 related financial hardships cannot be evicted is a significant impact to Plaintiffs. The CDC moratorium required a certification that the tenants had Covid-19 impacts on their ability to pay

Plaintiffs' Opp. to Ds' Mot. For SJ and Reply in Support of Ps' Mot. For SJ
No. 1:20-cv-03182-SAB   - 27

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    rent. *See* https://www.cdc.gov/coronavirus/2019-ncov/more/pdf/CDC-Eviction-

2    Moratorium-03292021.pdf, *cited in* ECF 33, at 13-14. The Proclamations do not

3    and Plaintiffs' tenants have not provided any such certification. *See* Second Decl. of

4    Enrique Jevons filed concurrently herewith.

5         **E. The Court should not follow other federal court's decisions that have**
          **upheld other eviction moratoria.**

6

7         Defendants argue that the Court should apply the reasoning in *El Papel* and

8    other courts regarding the eviction moratorium. ECF 30, at 55. As addressed above,

9    this case challenges more than an eviction moratorium. Defendants argue that it is

10   wrong to conclude that the court in *El Papel* looked only at the moratorium and not

11   the wiping out of tenant's obligation to pay rent. ECF 30, at 55. While the court

12   acknowledged in *El Papel* that the plaintiffs "take issue" with the language related

13   to rent as an enforceable debt, the court's decision in *El Papel* scarcely touches the

14   issue; it does not appear to have been the basis of the injunction motion.

15        In any event, here the Court should make a decision based on the facts and

16   arguments presented in this case and not on unknown arguments presented to a

17   different court. Unlike eviction moratoria challenged in other cases, this case

18   challenges the Proclamations which make the opportunity to recover unpaid rent

19   subject to an impossible condition—the offering of a repayment plan tailored to the

20   tenants' unique financial and health circumstances, information that Plaintiffs' are

21   unlikely to know and tenants are—in Defendants' own words—not "burdened"

22   with providing. ECF 31, at 7-8 ¶¶ 29-30.

23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

In conclusion, the court in *Blaisdell* explained the following truth:

> Emergency does not create power. Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved. The Constitution was adopted in a period of grave emergency. Its grants of power to the federal government and its limitations of the power of the States were determined in light of emergency, and they are not altered by emergency. What power was thus granted and what limitations were thus imposed are questions which have always been, and always will be, the subject of close examination under our constitutional system.

*Blaisdell,* 290 U.S. at 426. Such a close examination reveals that Plaintiffs have been deprived of their rights.

## III
### The Proclamations violate substantive due process.

Plaintiffs contend that the Proclamations violate due process for two reasons—they are vague in the ability of lessors to ever be able to treat a tenant's default as an enforceable debt and they are unduly oppressive. Defendants primarily argue that the "moratorium" is rational and legitimate and that is all substantive due process requires. ECF 30, at 56. For instance, Defendants cite *Richardson v. City & County of Honolulu,* 124 F.3d 1150, 1162 (9th Cir. 1997), for the concept that Plaintiffs bear an "extremely high" burden of showing the Proclamations are arbitrary or irrational. While that is not the test under which this claim is made, the Supreme Court in *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 532 (2005), made clear that due process violations may be shown when a regulation fails in fact to substantially advance a legitimate government interest. *Id.* at 542: *see also Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007). Even under

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    Defendants' rubric, substantive due process requires more than a legitimate purpose
2    and means that are rationally related to that purpose.

3    **A. Due process people from unduly oppressive governmental action.**

4    Accusing Plaintiffs of asking the Court to "spurn" the rational basis analysis,
5    Defendants argue that the Court in *Lingle* eliminated the unduly oppressive
6    standard. ECF 30, at 57 (quoting *Lingle,* 544 U.S. at 542).[8] But the analysis the
7    Court in *Lingle* "eschewed" was not the unduly oppressive standard, but the notion
8    that substantive due process claims would be determined by a battle of experts as to
9    whether a legislative enactment would actually achieve its stated purposes. *Id.* at
10   544-45. Plaintiffs do not contend the Proclamations do not achieve their purposes.

11   Defendants argue *Lingle*, 544 U.S. at 541, holds that cases such as *Goldblatt v.*
12   *Town of Hempstead*, 369 U.S. 590 (1962), should be read with a deferential
13   standard of review. ECF 30, at 57. But the due process question in *Lingle* was
14   whether the regulation was "a valid exercise of the police power." *Lingle*, 544 U.S.
15   at 541. Of course that is true, but it says nothing of the analysis of the undue
16   oppressive standard in due process which the Supreme Court has applied in a
17   variety of circumstances. *See, e.g., TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S.
18   443, 453-54 (1993) (oppressive fines violate due process); *Heath v. Alabama*, 474
19   U.S. 82, 103 (1985) (relentless prosecutorial action is unduly oppressive); *Pension*
20   *Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984) (retroactive
21   legislation).

_____

22   [8] Plaintiffs believe Defendants were intending to refer to 544 U.S. at 545 because
23   that is where the quotation exists in *Lingle*.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1   The undue oppression prong is a necessary component of this evaluation

2   because "[t]here is no reasonable or rational basis for claiming that the oppressive

3   and unfair methods [are] in any way essential the [legitimate government

4   objective]." *Haynes v. State of Wash.*, 373 U.S. 503, 519 (1963). Due process

5   protects people "from an unfair allocation of public burdens." *Koontz v. St. Johns*

6   *River Water Mgmt. Dist.*, 570 U.S. 595, 618 (2013). This protection exists

7   regardless of whether the regulation will rationally achieve its purpose. The

8   Proclamations are blatantly seeking to force the responsibility of shouldering a

9   societal burden on one group—the owners of rental housing.

10  Defendants note that the Supreme Court in *Blaisdell* summarily disposed of a

11  due process claim. ECF 30, at 58. As addressed above, *Blaisdell* simply delayed

12  foreclosure and had no impact on the underlying debt, and specifically relied on

13  three cases arising out of New York where the continuing obligation to pay the debt

14  was critical. *Blaisdell*, 290 U.S. at 440. A delay in possession was not oppressive.

15  Finally on this point, Defendants assert that the right to determine the conditions

16  under which someone stays on one's property is an "economic interest, not a

17  fundamental right, or liberty interest." ECF 30, at 58. In support, they cite

18  *Washington v. Glucksburg*, 521 U.S. 702, 720 (1997), which describes certain

19  rights which invoke heightened scrutiny. *Glucksburg* does not state either that the

20  rights it lists are frozen in time or that there is no other intermediate standard or

21  review. Defendants also cite to *Stop the Beach Renourishment, Inc. v. Florida Dep't*

22  *of Env'l Prot.,* 560 U.S. 702, 721 (2010), for the notion that "liberties protected by

23  substantive due process do not include economic liberties," but this language did

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1    not gain a majority of the court.[9] While economic interests are not free from

2    regulation, due process requires them to be free from undue oppression.

3    **B. The Proclamations violate due process by being void for vagueness.**

4    Defendants' primary response to Plaintiffs' void for vagueness argument is that

5    the doctrine "does not apply, because this provision does not impose criminal

6    punishment or civil penalties on the Landlords." ECF 30, at 59. But that is not true.

7    The Proclamations are quite clear: "Violators of this order may be subject to

8    criminal penalties pursuant to RCW 43.06.220(5)." Proclamation 20-19.6. The

9    statute provides: "Any person willfully violating any provision of an order issued

10   by the governor under this section is guilty of a gross misdemeanor." Plaintiffs

11   cannot treat unpaid rent as a debt without running this risk of criminal penalties.

12   Defendants argue that Plaintiffs have not shown how they attempted to learn

13   about tenants' personal financial and health circumstances. ECF 30, at 60.

14   _____

15   [9] Defendants also cite *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995), for the

     conclusion that there is no "fundamental right" to evict a tenant. ECF 30, at 59. The

16   Plaintiffs in *Rubinovitz* were claiming they were treated differently because they

17   evicted someone, not that they were denied the right to evict. Notably, the First

18   Circuit did not decide whether there was a "right to evict" for purpose of due

19   process but for Equal Protection Clause purposes. *Id.*

20   That is different from the situation at hand. Plaintiffs have people occupying

21   their property who are deemed by the Proclamations to no longer have to pay rent

22   or late fees or comply with their contractual obligations in any way.

23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

Tenants—well within their rights—do not provide that information. *See* ECF 26, at 3 ¶ 7; ECF 25, at 3 ¶ 6 and Second Declaration of Enrique Jevons filed contemporaneously herewith. Defendants also assert that Plaintiffs "would have some knowledge of tenant's financial circumstances, given that virtually all landlords require prospective tenants to disclose (and verify) their income." ECF 30, at 60 (emphasis added). Surely the requirement for a reasonable repayment plan in light of the tenant's financial circumstances cannot be based on their verified income when the tenancy began. The whole point of a repayment plan based on tenant's financial (and health) circumstances assumes there was a disruption in the tenant's finances due to Covid-19. (Wash. Rev. Code § 49.60.030 ) prohibits treating people differently based on their medical condition.) The repayment plan's trigger being information unavailable to Plaintiffs and completely in tenant's control, who have no obligation or incentive to cooperate, subjects Plaintiffs to an impossible procedure hurdle to being able to treat unpaid rent as an enforceable debt.

In sum, the Proclamations do not require tenants to establish a hardship or even communicate with their landlords to fashion a reasonable repayment plan. It is logical that that tenants would not want to share private information, especially that which is the trigger that would make them liable for debt.

**C. Defendants do not respond to the unconstitutional conditions argument.**

Plaintiffs argue that unconstitutional conditions are a feature of substantive due process. ECF 22, at 37. Defendants make no response.

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

1

**D. Plaintiffs' due process claims are not subsumed into other claims.**

2

3    Defendants argue that Plaintiffs cannot pursue a substantive due process claim

4    when other claims are at issue. ECF 30, at 60-61 (citing *Stop the Beach*

    *Renourishment,* 560 U.S. at 721). The portion of the cited case was not adopted by

5    a majority of the Court; it was adopted only by Justices Scalia, Alito, Thomas and

6    the Chief Justice. *Id.* Plaintiffs agree that explicit textual sources of constitutional

7    protection must be analyzed first because of the specificity of their application. But

8    other constitutional provisions do not necessarily address the protection of

9    substantive due process. For instance, just because a regulation of property does not

10   cause a Fifth Amendment taking does not mean the constitution no longer provides

11   protection from arbitrary, oppressive or vague regulations.

12   The controlling authority on this point is *Crown Point Development,* 506 F.3d

13   851, which explains: "*Lingle* pulls the rug out from under our rationale for totally

14   precluding substantive due process claims based on arbitrary or unreasonable

15   conduct." *Id.* at 855. Similarly, there is no specific textual source for protecting

16   Plaintiffs from unduly oppressive or vague regulations. Hence, Defendants are not

17   entitled to judgment on this claim.

18

**IV**
**Plaintiffs are entitled to declaratory relief under Section 1983**

19

20   Defendants do not deny that violations of the constitutional provisions asserted

21   entitle Plaintiffs to declaratory relief under Section 1983. Their only response is

22   their position is that the constitutional provisions were not violated. For the reasons

23

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

addressed above, the Proclamations violate constitutional rights and Plaintiffs are entitled to declaratory relief under Section 1983.

### Conclusion

Plaintiffs encourage the Court to grant their motion for summary judgment and deny the Defendants' cross-motion. Plaintiffs recognize the Pandemic and its economic impacts are significant. But unless Plaintiffs' rights are also recognized, the burden of dealing with this crisis will be inappropriately foisted on them. Unlike the businesses which were shut down, Plaintiffs were and are required to continue their business—without compensation. The solution to a public burden should be paid by the public which is the underlying basis for the Fifth Amendment. This motion for protects Plaintiffs lest they be saddled with providing housing at their own expense instead of an expense shared by the community as a whole.

Respectfully submitted this 9th day of June, 2021,

Stephens & Klinge LLP

*/s/ Richard M. Stephens,* WSBA No. 21776
10900 NE 4th Street, Suite 2300
Bellevue, WA  98004
stephens@sklegal.pro
425-453-6206
Attorneys for Plaintiffs

Plaintiffs' Opp. to Ds' Mot. For SJ and Reply in Support
of Ps' Mot. For SJ
No. 1:20-cv-03182-SAB    - 35

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206