1  CRISTINA SEPE, WSBA #53609
   ZACHARY PEKELIS JONES, WSBA #44557
2  BRIAN H. ROWE, WSBA #56817
   Assistant Attorneys General
3  JEFFREY T. EVEN, WSBA #20367
   Deputy Solicitor General
4  800 5th Avenue, Ste. 2000
   Seattle, WA  98104
5  (206) 474-7744

6
                **UNITED STATES DISTRICT COURT**
7               **EASTERN DISTRICT OF WASHINGTON**
                          **AT YAKIMA**
8
   ENRIQUE JEVONS, as managing        NO. 1:20-cv-03182-SAB
9  member of Jevons Properties LLC,
   et al.,                            DEFENDANTS' REPLY
10                                     BRIEF IN SUPPORT OF
              Plaintiffs,              CROSS-MOTION FOR
11                                     SUMMARY JUDGMENT
       v.
12                                     NOTED FOR: August 5, 2021
   JAY INSLEE, in his official         at 1:30 pm
13 capacity of the Governor of the
   State of Washington, et al.         *With Oral Argument*
14
              Defendants.
15

16

17

18

19

20

21

22

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................1

II.   ARGUMENT ......................................................................................2

    A.   Jurisdictional Bars Foreclose the Landlords' Claims.............................2

        1.   The Landlords lack standing .......................................................2

        2.   The Moratorium is set to expire on June 30, 2021...........................5

        3.   The Governor has immunity under the Eleventh Amendment ........6

    B.   The Moratorium Does Not Violate the Takings Clause........................7

        1.   The Moratorium does not effect a physical taking .......................8

        2.   The State has not taken physical possession of the Landlords' properties, not even temporarily........................................12

        3.   The Moratorium does not "take" contract rights ...........................14

        4.   The Moratorium does not "take" security deposits........................14

        5.   The Landlords are not entitled to equitable relief ..........................15

    C.   The Moratorium Comports with the Contracts Clause.........................16

        1.   The Moratorium does not substantially impair contractual relationships between the Landlords and their tenants ..................16

        2.   The Moratorium appropriately and reasonably advances a significant and legitimate public purpose .......................................19

    D.   The Moratorium Does Not Violate Substantive Due Process..............23

    E.   Plaintiffs Are Not Entitled to Declaratory Relief Under § 1983...........25

III.  CONCLUSION ................................................................................25

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*,
  No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021) ................................. 3

*Albright v. Oliver*,
  510 U.S. 266 (1994) .......................................................................................... 25

*Apt. Ass'n of Los Angeles Cnty. v. City of Los Angeles*,
  500 F. Supp. 3d 1088 (C.D. Cal. 2020) .............................................................. 2

*Arkansas Game & Fish Comm'n v. United States*,
  568 U.S. 23 (2012) ............................................................................................ 13

*Armstrong v. United States*,
  464 U.S. 40 (1960) ............................................................................................ 15

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
  729 F.3d 937 (9th Cir. 2013) .............................................................................. 6

*Auracle Homes, LLC v. Lamont*,
  478 F. Supp. 3d 199 (D. Conn. 2020) ................................................................. 2

*Babbitt v. Youpee*,
  519 U.S. 234 (1997) .......................................................................................... 16

*Baptiste v. Kennealy*,
  490 F. Supp. 3d 353 (D. Mass 2020) ............................................................ 2, 19

*Block v. Hirsh*,
  256 U.S. 135 (1921) .......................................................................................... 18

*Brown v. Azar*,
  No. 1:20-CV-03702-JPB,
  2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) ..................................................... 4

*Campanelli v. Allstate Life Ins. Co.*,
  322 F.3d 1086 (9th Cir. 2003) .......................................................................... 19

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Chambless Enters., LLC v. Redfield*,
   No. 3:20-CV-01455,
   2020 WL 7588849 (W.D. La. Dec. 22, 2020) ...................................................4

*Cienega Gardens v. United States*,
   331 F.3d 1319 (Fed. Cir. 2003) ........................................................................14

*Cwynar v. City and County of San Francisco*,
   90 Cal. App. 4th 637 (2001) .............................................................................11

*Davis v. FEC*,
   554 U.S. 724 (2008) ............................................................................................5

*Doe v. Virginia Dep't of State Police*,
   713 F.3d 745 (4th Cir. 2013) ..............................................................................2

*Dolan v. City of Tigard*,
   512 U.S. 374 (1994).........................................................................................24

*Doyle v. Hogan*,
   No. 19-2064, 2021 WL 2424800 (4th Cir. June 15, 2021) ................................6

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
   438 U.S. 59 (1978)...........................................................................................16

*El Papel LLC v. Inslee*,
   No. 2:20-CV-01323-RAJ-JRC,
   2020 WL 8024348 (W.D. Wash. Dec. 2, 2020),
   *report and recommendation adopted*,
   2021 WL 71678 (Jan. 8, 2021).................................................................passim

*Elmsford Apt. Assocs., LLC v. Cuomo*,
   469 F. Supp. 3d 148 (S.D.N.Y. 2020) ..............................................2, 9, 17, 18

*Energy Rsrvs. Grp. v. Kansas Power & Light Co.*,
   459 U.S. 400 (1983).........................................................................................21

*Ex parte Young*,
   209 U.S. 123 (1908)........................................................................................6, 7

*F.C.C. v. Fla. Power Corp.*,
   480 U.S. 245 (1987).........................................................................................11

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*F.C.C. v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012).....................................................................................25

*Faust v. Inslee*,
  No. C20-5356, 2020 WL 4816147 (W.D. Wash. Aug. 19, 2020).....................7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000).......................................................................................3

*Graham v. Connor*,
  490 U.S. 386 (1989).....................................................................................25

*HAPCO v. City of Philadelphia*,
  482 F. Supp. 3d 337 (E.D. Pa. 2020)..................................................2, 18, 24

*Heights Apts., LLC v. Walz*,
  No. 20-CV-2051 (NEB/BRT),
  2020 WL 7828818 (D. Minn. Dec. 31, 2020) ...............................................2, 4

*Hendler v. United States*,
  952 F.2d 1364 (Fed. Cir. 1991) .......................................................................13

*Hodel v. Irving*,
  481 U.S. 704 (1987).......................................................................................16

*Home Bldg. & Loan Ass'n v. Blaisdell*,
  290 U.S. 398 (1934)................................................................................passim

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.*,
  669 F.3d 928 (9th Cir. 2011) ..........................................................................16

*Kim v. United States*,
  121 F.3d 1269 (9th Cir. 1997) ........................................................................23

*Kimball Laundry Co. v. United States*,
  338 U.S. 1 (1949)...........................................................................................12

*L.A. Cnty. Bar Ass'n v. Eu*,
  979 F.2d 697 (9th Cir. 1992) ............................................................................6

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005).......................................................................................24

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982)............................................................8, 13, 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................ 4

*Lynch v. United States*,
  292 U.S. 571 (1934) .............................................................. 14

*MacEwen v. Inslee*,
  No. C20-5423 BHS,
  2020 WL 4261323 (W.D. Wash. July 24, 2020)................................ 7

*McKay v. Ingleson*,
  558 F.3d 888 (9th Cir. 2009) .................................................. 9

*Nollan v. Cal. Coastal Comm'n*,
  483 U.S. 825 (1987)............................................................. 24

*Nw. Grocery Ass'n v. City of Seattle*,
  No. C21-0142-JCC,
  2021 WL 1055994 (W.D. Wash. Mar. 18, 2021) .......................... 18

*Omnia Commercial Co., Inc. v. United States*,
  261 U.S. 502 (1923).............................................................. 14

*Palmyra Pac. Seafoods, L.L.C. v. United States*,
  561 F.3d 1361 (Fed. Cir. 2009) .............................................. 14

*Penn Central Transp. Co. v. City of New York*,
  438 U.S. 104 (1978).........................................................9, 13, 14

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*,
  467 U.S. 717 (1984).............................................................. 23

*Reiter v. Wallgren*,
  184 P.2d 571 (Wash. 1947) .................................................... 7

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984).............................................................. 16

*SKS & Assocs. v. Dart*,
  619 F.3d 674 (7th Cir. 2010) .................................................. 18

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

v

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Skyworks, Ltd. v. Centers for Disease Control & Prevention*,
    No. 5:20-CV-2407, 2021 WL 2228676 (N.D. Ohio June 3, 2021)....................3

*State v. Clausen*,
    264 P. 403 (Wash. 1928) ...........................................................................7

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*,
    560 U.S. 702 (2010)...........................................................................24, 25

*Sullivan v. Nassau Cnty. Interim Fin. Auth.*,
    959 F.3d 54 (2d Cir. 2020) ......................................................................18

*Sveen v. Melin*,
    138 S. Ct. 1815 (2018)................................................................16, 17, 19

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002).........................................................................8, 9, 11, 12

*Terkel v. CDC*,
    No. 6:20-CV-00564,
    2021 WL 742877 (E.D. Tex. Feb. 25, 2021) ............................................3

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*,
    No. 2:20-CV-02692-MSN-atc,
    2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021),
    *den'g stay pending appeal*, 992 F.3d 518 (6th Cir. 2021) ......................3

*United States v. General Motors Corp.*,
    323 U.S. 373 (1945)................................................................................12

*United States v. Petty Motor Co.*,
    327 U.S. 372 (1946)................................................................................12

*Yee v. City of Escondido, Cal.*,
    503 U.S. 519 (1992).........................................................................8, 10, 11, 12

*Zepeda Rivas v. Jennings*,
    845 F. App'x 530 (9th Cir. 2021)............................................................24

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

vi

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

<u>Constitutional Provisions</u>

U.S. Const. amend. V .................................................................. 1, 2, 15, 25

U.S. Const. art. I, § 10 ........................................................................ passim

Wash. Const. art. III, § 5 ............................................................................. 6

<u>Statutes</u>

28 U.S.C. § 1983 ........................................................................................ 25

2021 Wash. Sess. Laws, ch. 115 ................................................................. 5

Engrossed Second Substitute S.B. 5160,
   67th Leg., Reg. Sess. (Wash. 2021) ................................................. 5, 6, 22

Wash. Rev. Code § 59.18.280 ................................................................... 15

<u>Other Authorities</u>

Wash. Office of the Governor,
   Proclamation 20-19.6 (Mar. 18, 2021) ........................................... passim

CDC, *Temporary Halt in Residential Evictions to Prevent the*
   *Further Spread of COVID-19* (June 24, 2021),
   https://bit.ly/3gR7x2H .......................................................................... 3

Jason DeParle, *Federal Aid to Renters Moves Slowly, Leaving Many*
   *at Risk*, N.Y. Times (updated May 4, 2021),
   https://nyti.ms/35PYkl3 ...................................................................... 23

Jennifer Tolbert, et al., *Vaccination is Local: COVID-19 Vaccination Rates Vary by*
   *County and Key Characteristics*, Kaiser Family Found. (May 12, 2021),
   https://bit.ly/3xOKg7k ........................................................................ 22

Wash. Gov. Jay Inslee, Press Release,
   *Inslee announces eviction moratorium "bridge"* (June 24, 2021),
   https://bit.ly/3qmdPKQ ......................................................................... 6

Wash. State Dep't of Health, COVID-19 Data Dashboard,
   https://www.doh.wa.gov/Emergencies/COVID19/DataDashboard (last visited
   June 24, 2021) ..................................................................................... 22

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

vii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# I.   INTRODUCTION

The Governor placed a moratorium on certain evictions to mitigate the health and economic impacts of COVID-19 on Washington residents. Limiting evictions has slowed the spread of COVID-19, reduced housing instability, and saved lives. Renters protected by Proclamation 20-19.6 (the Moratorium) have been able to stay home and adhere to public health guidelines. And the Moratorium has—during a time of immense economic fragility and hardship—protected renters from homelessness or from moving into shared or congregate living spaces, where the risk of COVID-19 transmission is high.

The Landlords' Opposition to the State's Cross-Motion for Summary Judgment distorts the governing law, mischaracterizes the Moratorium, and fails to establish a genuine dispute of material fact as to any of their claims. The Moratorium invalidates no leases, discharges no tenants' debts, appropriates no property, and merely regulates the landlord-tenant relationship. As a sister court held, the Moratorium is a "reasonable and appropriate" strategy to "address vital public interests during a national public crisis." *El Papel LLC v. Inslee*, No. 2:20-CV-01323-RAJ-JRC, 2020 WL 8024348, at *12 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 71678 (Jan. 8, 2021). The Court should grant summary judgment in favor of the State on the Landlords' Contracts Clause, Takings Clause, and Due Process Clause claims. This outcome would be in accord with numerous federal courts across the country that have denied property owners relief from state and local evictions moratoria with the same or similar constitutional

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

claims. *See Heights Apts., LLC v. Walz*, No. 20-CV-2051 (NEB/BRT), 2020 WL 7828818 (D. Minn. Dec. 31, 2020); *Apt. Ass'n of Los Angeles Cnty. v. City of Los Angeles*, 500 F. Supp. 3d 1088 (C.D. Cal. 2020); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353 (D. Mass 2020); *HAPCO v. City of Philadelphia*, 482 F. Supp. 3d 337 (E.D. Pa. 2020); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199 (D. Conn. 2020); *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148 (S.D.N.Y. 2020). It would also be consistent with the Thurston County Superior Court's recent order granting summary judgment in favor of the State on all claims, including claims under the Washington State Constitution's parallel Takings and Contracts Clauses. *See* Second Declaration of Cristina Sepe, Exs. N, O.

## II.    ARGUMENT

### A.    Jurisdictional Bars Foreclose the Landlords' Claims[1]

### 1.    The Landlords lack standing

The CDC moratorium—which is currently in effect—remains an obstacle to the Landlords "establishing traceability and redressability" because it is an independent policy "that would prevent relief even if the court were to render a favorable decision" to the Landlords. *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 756 (4th Cir. 2013). The Landlords must show that a favorable decision here is *likely* to redress their injuries. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

---

[1] The parties agree that the Court should dismiss the Landlords' Takings claim under the Washington State Constitution. *See* ECF No. 37 at 14.

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*(TOC), Inc.*, 528 U.S. 167, 181 (2000). They are unable to do so, because if the Moratorium was not in effect, the CDC moratorium would be—prohibiting the Landlords from evicting their non-paying tenants and blocking redress from this facet of the Moratorium. *See* CDC, *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19* (June 24, 2021), https://bit.ly/3gR7x2H (extending the CDC moratorium through July 31, 2021).

The Landlords argue that the CDC moratorium is currently not in effect, ECF No. 37 at 10–11, but this is flatly wrong. The four courts that have decided against the CDC moratorium have stayed or circumscribed their orders such that the CDC moratorium would still be in effect in Washington State if the Moratorium is enjoined or not in effect. *See Ala. Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 21-5093, 2021 WL 2221646, at *1 (D.C. Cir. June 2, 2021) (denying motion to vacate the district court's order staying its vacatur order pending appeal); *Skyworks, Ltd. v. Centers for Disease Control & Prevention*, No. 5:20-CV-2407, 2021 WL 2228676, at *14 (N.D. Ohio June 3, 2021) (clarifying that the declaratory judgment the court entered "binds the parties and their members" and declining the plaintiffs' invitation to expand the scope of the judgment more broadly); *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urban Dev.*, No. 2:20-CV-02692-MSN-atc, 2021 WL 1171887, at *10 (W.D. Tenn. Mar. 15, 2021), *den'g stay pending appeal*, 992 F.3d 518 (6th Cir. 2021) (determining the CDC moratorium was "unenforceable in the Western District of Tennessee" only); *Terkel v. CDC*, No. 6:20-CV-00564, 2021 WL 742877, at *2 (E.D. Tex. Feb. 25, 2021) (declining to issue an injunction); *see*

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    *also* ECF No. 36-1, Ex. L (DOJ news release explaining that the *Terkel* decision

2    "does not extend beyond the particular plaintiffs"); *Chambless Enters., LLC v.*

3    *Redfield*, No. 3:20-CV-01455, 2020 WL 7588849 (W.D. La. Dec. 22, 2020) (CDC

4    moratorium did not exceed statutory authority of the CDC); *Brown v. Azar*, No. 1:20-

5    CV-03702-JPB, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) (same).

6         The Landlords also argue that the court in *Heights Apartments* determined that

7    the CDC moratorium was narrower in some respects, when compared to the

8    Minnesota moratorium at issue in that case. *See* 2020 WL 7828818, at *5. The

9    plaintiffs in *Heights Apartments*, however, also alleged that they wanted to evict

10   several tenants for other lease violations—which would be allowed under the CDC

11   moratorium but was not allowed under the Minnesota moratorium. *See id.* By

12   contrast, the Landlords here do not provide evidence that their tenants are violating

13   lease provisions—other than the nonpayment of rent—and thus would not be

14   protected by the CDC moratorium. *See* ECF Nos. 23, 24, 25, 37-1, 37-2. It remains

15   the Landlords' burden—not the State's—to explain why the CDC moratorium poses

16   no obstacle to their abilities to evict tenants for nonpayment. *See Lujan v. Defenders*

17   *of Wildlife*, 504 U.S. 555, 561 (1992) ("Since [the elements of standing] are not mere

18   pleading requirements but rather an indispensable part of the plaintiff's case, each

19   element must be supported in the same way as any other matter on which the plaintiff

20   bears the burden of proof, *i.e.*, with the manner and degree of evidence required at

21   the successive stages of the litigation."). The Landlords relatedly contend their

22   tenants have not submitted specific declarations to qualify for the CDC moratorium.

1  But their tenants are not required to submit these declarations yet, because the CDC

2  moratorium would only take effect *if* the Court enjoined the State's Moratorium.

3      The Landlords additionally assert that they have standing to challenge the

4  Moratorium's prohibition on treating unpaid rent "as an enforceable debt or

5  obligation that is owing or collectable." Wash. Office of the Governor,

6  Proclamation 20-19.6 (Mar. 18, 2021) (ECF No. 33-1 at 75–84). But this prohibition

7  is not absolute; it does not apply to property owners who offer their tenants a

8  reasonable repayment plan and whose tenants refuse or fail to comply with that plan.

9  The Landlords have not taken the first step in attempting to collect unpaid rent from

10  their tenants by offering them a reasonable repayment plan. *See* ECF No. 37-2 at 5–

11  6 (form letter sent by Plaintiff Jevons); ECF No. 36-1 at 209 (rent demand letter sent

12  by the Glenn Plaintiffs). Because the Landlords have left that remedy unpursued and

13  its sufficiency untested, they lack standing to challenge that aspect of the Moratorium

14  as well—especially as grounds for a separate challenge to the prohibition on evictions

15  for unpaid rent. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (a plaintiff must

16  demonstrate standing for each claim "he seeks to press and for each form of relief

17  that is sought").

18      **2.      The Moratorium is set to expire on June 30, 2021**

19      The Moratorium under Proclamation 20-19.6 will end on June 30, 2021. *See*

20  Engrossed Second Substitute S.B. 5160, 67th Leg., Reg. Sess. (Wash. 2021), *enacted*

21  *as* 2021 Wash. Sess. Laws, ch. 115. Some requirements under E2SSB 5160 will not

22  be fully operationalized by July 1, 2021. *See, e.g.*, Second Sepe Decl., Ex. P (letter

from bill's sponsor describing implementation of appointing counsel for tenants). The Office of the Governor will institute interim, bridge measures between when Proclamation 20-19.6 ends and E2SSB 5160—buoyed by hundreds of millions of federal rental assistance dollars—is operationalized. *See* Wash. Gov. Jay Inslee, Press Release, *Inslee announces eviction moratorium "bridge"* (June 24, 2021), https://bit.ly/3qmdPKQ. Such measures differ from Proclamation 20-19.6, relieving some current restrictions and providing a pathway for implementing E2SSB 5160. But the bridge proclamation and final details have yet to be released. When it is, counsel for the State will re-evaluate whether its mootness argument can be continued in good faith and will provide a Notice of Supplemental Authority. Based on the current status of the Moratorium and what is known about the bridge plan at the time of this filing, the State respectfully reserves its mootness argument.

**3.    The Governor has immunity under the Eleventh Amendment**

The Landlords ignore precedent on the lack of federal jurisdiction over acts of state officials who have a "generalized duty to enforce state law" but do not have a "fairly direct" connection to enforcement of those laws. *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). They cite the Governor's duty to "see that the laws are faithfully executed." Wash. Const. art. III, § 5. But this is exactly the type of generalized duty that federal courts routinely reject as insufficient under *Ex parte Young*, 209 U.S. 123, 157 (1908). *See, e.g.*, *Doyle v. Hogan*, No. 19-2064, 2021 WL 2424800, at *3 (4th Cir. June 15, 2021); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013). Based on the Governor's

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   lack of enforcement power, several courts within this district have dismissed the

2   Governor from lawsuits challenging his proclamations—including the Moratorium.

3   *See El Papel*, 2020 WL 8024348, at *6; *Faust v. Inslee*, No. C20-5356, 2020

4   WL 4816147, at *1 (W.D. Wash. Aug. 19, 2020); *MacEwen v. Inslee*, No. C20-5423

5   BHS, 2020 WL 4261323, at *2 (W.D. Wash. July 24, 2020). This Court should too.

6        The Landlords quote two Washington Supreme Court cases to argue that the

7   Governor has enforcement power over the Moratorium, but both provide general

8   propositions about the functions of the judiciary and the executive: "As the final right

9   to determine the true intent and purpose of all laws is lodged in the Supreme Court

10  of this state, so is the final determination as to their enforcement and execution lodged

11  in the Governor." *Reiter v. Wallgren*, 184 P.2d 571, 576 (Wash. 1947) (quoting *State*

12  *v. Clausen*, 264 P. 403, 405 (Wash. 1928)). And neither case is useful here. They do

13  not address when an individual is able to sue an officer in federal court under *Ex parte*

14  *Young* or the Governor's power to specifically enforce his proclamations. *See Reiter*,

15  184 P.2d at 576 (requiring taxpayer make a demand on the attorney general to bring

16  suit against another state agency or else show futility); *State v. Clausen*, 264 P. at 405

17  (explaining the governor's superior authority to bring an action where the attorney

18  general and governor disagree on the course of action).

19  **B.      The Moratorium Does Not Violate the Takings Clause**

20       The Landlords' Takings claim has several fatal defects: First, the Moratorium

21  does not effect a physical taking because the Landlords are not suffering permanent

22  physical invasion of their properties. Second, the State has not directly appropriated,

1    even temporarily, the Landlords' properties. Third, the State has not taken contract

2    rights or security deposits. And finally, the Landlords cannot obtain equitable relief

3    under this claim.

4          **1.      The Moratorium does not effect a physical taking**

5         The State merely forecloses for a period of time a particular remedy—

6    eviction—in certain circumstances for nonpayment of rent; this is not a physical

7    taking.[2] "The government effects a physical taking only where it *requires* the

8    landowner to submit to the physical occupation of his land." *Yee v. City of Escondido,*

9    *Cal.*, 503 U.S. 519, 527 (1992); *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe*

10    *Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002) (physical takings are "relatively rare").

11    In contrast to such a compelled physical occupation, "[s]tates have broad power to

12    regulate housing conditions in general and the landlord-tenant relationship in

13    particular without paying compensation for all economic injuries that such regulation

14    entails." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982).

15    Here, the Moratorium merely regulates the landlord-tenant relationship and does not

16    subject the Landlords to a "permanent physical occupation" of their properties. *Id.*

17    at 434.

18         The Landlords invoked only *one* takings test to argue that the Moratorium is a

19

20         [2] *See also Heights Apts.*, 2020 WL 7828818, at *14; *Baptiste*, 490 F. Supp. 3d

21    at 388–90; *Auracle Homes*, 478 F. Supp. 3d at 220–21; *Elmsford Apt. Assocs.*, 469

22    F. Supp. 3d at 164.

DEFENDANTS' REPLY ISO           8        ATTORNEY GENERAL OF WASHINGTON
CROSS-MSJ                                    Complex Litigation Division
NO. 1:20-cv-03182-SAB                       800 5th Avenue, Suite 2000
                                              Seattle, WA 98104-3188
                                              (206) 474-7744

physical taking, *see* ECF No. 22 at 6, ECF No. 27 ¶ 60, but chides the State for pointing out that their cited regulatory takings cases do not apply, *see* ECF No. 37 at 16. To the extent the Landlords now argue that the Moratorium is both a physical taking and regulatory taking, ECF No. 37 at 16, the Court should reject it. For one, the Landlords did not make distinct (or any) arguments that the Moratorium is a regulatory taking in their summary judgment motion, so they have waived it. *McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009). For another, the Landlords still do not clearly argue that the Moratorium is a categorical taking—where the Landlords have been denied *all* economically beneficial use of land. *See Tahoe-Sierra*, 535 U.S. at 330. Nor could they. The Landlords "still enjoy many economic benefits of ownership[,]" as they "continue to accept rental payments from tenants not facing financial hardship[.]" *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 164. The Landlords likewise do not analyze the factors from *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), to argue that the Moratorium is a non-categorical regulatory taking. *See id.* at 165–168 (applying the *Penn Central* factors to hold that New York's moratorium was not a regulatory taking).

The Landlords argue that their ability to rent their properties is conditioned on forfeiting the rights to compensation for a physical occupation. ECF No. 37 at 15 (citing *Loretto*, 458 U.S. at 459 n.17). But this is a serious misreading of the Moratorium. Nothing in Proclamation 20-19.6 diminishes the tenant's responsibility to pay the entire amount of rent due and owing under the lease; the Moratorium does not diminish the tenant's rental obligation by even a penny. The Landlords can later

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    seek to collect all that they are owed when the Moratorium is lifted (under E2SSB)

2    or seek it now (following the requirements of Procl. 20-19.6). The argument also

3    ignores that tenants and landlords may access rental assistance funds.

4         The Landlords' attempt to distinguish this case from *Yee* remain unpersuasive.

5    In *Yee*, the Supreme Court held that a rent control ordinance did not constitute a

6    taking. Though the Court did not expressly hold that the ordinance, working in

7    conjunction with a state statute, prohibited eviction, the Court certainly considered

8    the petitioners' arguments that there was indeed a prohibition on evictions—with a

9    carve-out (similar to the Moratorium's) for changes of use after notice. *See Yee*, 503

10   U.S. at 527–28. Even then, because "[p]etitioners' tenants were invited by petitioners,

11   not forced upon them by the government," they had not been subjected to a compelled

12   physical invasion of their property; therefore, no physical taking had occurred. *Id.*

13   at 528. As in *Yee*, the Moratorium does not compel the Landlords to rent their

14   properties. Instead, the Landlords voluntarily chose to rent to their tenants. And the

15   Landlords' assertion that some tenants have continued to physically occupy their

16   properties, ECF No. 37 at 16, is like the claim rejected in *Yee*, where the mobile park

17   owners similarly argued they could not evict their tenants. *Id.* at 526–27 ("Because

18   under the California Mobilehome Residency Law the park owner cannot evict a

19   mobile home owner or easily convert the property to other uses, the argument goes,

20   the mobile home owner is effectively a perpetual tenant of the park . . . .").

21        The Moratorium merely regulates the Landlords' "*use* of their land by

22   regulating the relationship between landlord and tenant[,]" and is thus not a physical

taking. *Id.* at 528; *see also Tahoe-Sierra*, 535 U.S. at 322–23 (explaining that a government regulation that merely prohibited landlords from evicting tenants to pay a higher rent in *Block v. Hirsh*, 256 U.S. 135 (1921), was not a categorical taking); *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987) ("statutes regulating the economic relations of landlords and tenants are not *per se* takings").

Although "[a] different case would be presented were the statute, on its face or as applied, to compel a landowner over objection to rent his property or to refrain in perpetuity from terminating a tenancy[,]" *Yee*, 503 U.S. at 528, that is not the case here. The Landlords "invited" and "voluntarily rented" their units to renters. *Id.* at 527–28. The Moratorium will not continue in perpetuity, and it allows the Landlords to "change the use" of their land, for example, by selling or occupying the property themselves. *Id.* at 528; *see* Procl. 20-19.6 (requiring 60-day notice for sale or re-occupation). The Moratorium also permits the Landlords to evict or terminate a tenancy if the action "is necessary to respond to a significant and immediate risk to the health, safety, or property of others created by the resident." Procl. 20-19.6.

*Cwynar v. City and County of San Francisco*, 90 Cal. App. 4th 637 (2001), a non-precedential California case, does not support the Landlords. That case involved a takings challenge to an ordinance restricting property owners from evicting tenants to allow the owners to use the properties as a residence for themselves or their family. The court held that the plaintiffs should have been permitted to amend their complaint to present allegations that the ordinance "effectuate[d] life-time tenancies which effectively extinguish[ed] plaintiffs' right to occupy . . . their property." *Id.* at 655.

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    Such a holding is compatible with *Yee*, which acknowledged that a physical taking

2    may occur where the statute compels a landlord "to refrain in perpetuity from

3    terminating a tenancy." *Yee*, 503 U.S. at 528. But lifetime tenancies are not being

4    compelled here.

5        The Moratorium is a temporary regulation of the landlord-tenant relationship;

6    it does not authorize a compelled physical invasion of property.

7        **2.    The State has not taken physical possession of the Landlords'
            properties, not even temporarily**

8

9        The Landlords mistakenly rely on cases where the government has temporarily

10   occupied property to make their argument that "a temporary taking of

     property . . . requires payment of just compensation." ECF No. 37 at 19. The State

11   agrees that the government must compensate a property owner when "*the government*

12   *occupies* the property for its own purposes, even though that use is temporary."

13   *Tahoe-Sierra*, 535 U.S. at 322 (emphasis added). But here, the State itself is not

14   occupying the Landlords' properties. Therefore, the cases the Landlords rely on do

15   not support their argument.

16
     *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949), *United States v. Petty*

17   *Motor Co.*, 327 U.S. 372 (1946), and *United States v. General Motors Corp.*, 323

18   U.S. 373 (1945), are cases where the federal government itself physically occupied

19   buildings for temporary periods of time. *See Tahoe-Sierra*, 535 U.S. at 322 (citing

20   *General Motors*, 323 U.S. 373, and *Petty Motor*, 327 U.S. 372, for the proposition

21   that the government must compensate for its temporary occupation of property).

22

DEFENDANTS' REPLY ISO                    12

1   None of those cases dealt with regulations between property owners and third-party

2   tenants whom they had voluntarily invited to occupy the property; they were about

3   the federal government's own appropriation and occupation of facilities.

4       Again, *Hendler v. United States*, 952 F.2d 1364 (Fed. Cir. 1991), is of no avail

5   to the Landlords. The case dealt with the government's physical intrusion on private

6   property through concrete wells it installed, giving rise to a *per se* taking under

7   *Loretto. Id.* at 1377. Here, by contrast, the State has not installed anything on or

8   otherwise appropriated the Landlords' properties for its own use.

9       The Landlords again return to *Arkansas Game & Fish Commission v. United*

10  *States*, 568 U.S. 23 (2012), to argue that a temporary occupation can trigger takings

11  liability. But this reliance is misplaced. The Court in *Arkansas Game & Fish*

12  *Commission* held "simply and only, that government-induced flooding temporary in

13  duration gains no automatic exemption from Takings Clause inspection." 568 U.S.

14  at 38. The Court then proceeded to apply a multi-factor test for government-created

15  flooding different from the general regulatory-taking analysis under *Penn Central*

16  *Transportation Co.*, 438 U.S. at 124 (1978). *See id.* at 38–40. "[I]ntermittent flooding

17  cases reveal [that] such temporary limitations are subject to a more complex

18  balancing process to determine whether they are a taking. The rationale is evident:

19  they do not absolutely dispossess the owner of his rights to use, and exclude others

20  from, his property." *Loretto*, 458 U.S. at 436 n.12.

21      The State has not directly appropriated the Landlords' properties, even

22  temporarily. No physical taking has occurred.

### 3. The Moratorium does not "take" contract rights

Cases cited by the Landlords, including *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003), and *Lynch v. United States*, 292 U.S. 571 (1934), are inapposite because the State is not a party to the lease agreements and has not inserted itself in place of one of the contracting parties so as to "take" the contracts.

"The government does not 'take' contract rights pertaining to a contract between two private parties simply by engaging in lawful action that affects the value of one of the parties' contract rights." *Palmyra Pac. Seafoods, L.L.C. v. United States*, 561 F.3d 1361, 1365 (Fed. Cir. 2009). To establish that the government took private contract rights, a plaintiff must demonstrate that the government "put itself in the shoes" of one of the parties and assumed "all the rights and advantages" of that party. *Id.* at 1365–66 (quoting *Brooks-Scanlon Corp. v. United States*, 265 U.S. 106, 120 (1924)). It is insufficient for the plaintiff to merely allege that the government frustrated the rights of a party or took the subject matter of the contract that made performance impossible. *See Omnia Commercial Co., Inc. v. United States*, 261 U.S. 502, 511 (1923). Here, the Landlords do not show that the State replaced itself with one of the original contracting parties so that it took the contract for its own use as discussed in *Omnia*. Nor have the Landlords shown that the State has gone "too far," again not briefing the "ad, hoc, factual inquiry" required by *Penn Central*. *See Cienega Gardens*, 331 F.3d at 1337; ECF No. 22 at 11–12; ECF No. 36 at 19–20.

### 4. The Moratorium does not "take" security deposits

The State is not confiscating security deposits. Instead, the Moratorium

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

prohibits landlords from withholding from tenants any portion of a security deposit in order to collect unpaid rent. *See* Procl. 20-19.6. It modifies the scheme for how Landlords may use security deposits.[3]

*Armstrong v. United States*, 464 U.S. 40 (1960), does not assist the Landlords, where the federal government's "total destruction . . . of all value of [the] liens" amounted to a "taking." *Id.* at 48. Here, the State has not acquired any security deposit for itself. Nor has the State "for its own advantage destroyed the value of the [security deposits.]" *Id.* The Landlords remain able to apply security deposits for tenant other violations of the RTLA, subject to accounting requirements. *See* Wash. Rev. Code § 59.18.280. The Moratorium does not effect a taking of security deposits.

**5.      The Landlords are not entitled to equitable relief**

Even if the Landlords could show that a taking has occurred—which they cannot—they would not be entitled to equitable relief. The Takings Clause only prohibits states from taking private property for public use "without just compensation," U.S. Const. amend. V, so "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984); *see also*

---

[3] Under Washington law, "[a] tenant's security deposit is the personal property of the tenant unless and until they breach their duties under the RLTA." *Silver v. Rudeen Mgmt. Co., Inc.*, 484 P.3d 1251, 1259 (Wash. 2021).

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 669 F.3d 928, 932 (9th Cir. 2011) (injunctive and declaratory relief for Takings claim not available where plaintiff could seek damages against the United States).

As explained by the *El Papel* court, if the Moratorium has effected a taking, the Landlords can be compensated by damages measured by unpaid rent and late fees. *See* 2020 WL 8024348, at *13. So the cases suggesting declaratory relief is available for potentially *uncompensable* damages do not apply here. *See, e.g.*, *Babbitt v. Youpee*, 519 U.S. 234 (1997) (alleged takings where compensation was unavailable); *Hodel v. Irving*, 481 U.S. 704 (1987) (same); *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 71 n.15 (1978) (adequate compensation not assured).

## C. The Moratorium Comports with the Contracts Clause

The Moratorium does not violate the Contracts Clause: it does not substantially impair the Landlords' contractual rights and it also reasonably and appropriately advances "a significant and legitimate public purpose." *Sveen v. Melin*, 138 S. Ct. 1815, 1822 (2018); *see El Papel*, 2020 WL 8024348, at *9.[4]

### 1. The Moratorium does not substantially impair contractual relationships between the Landlords and their tenants

The Moratorium does not substantially impair the Landlords' contracts

---

[4] *See also Heights Apts.*, 2020 WL 7828818, at *12; *Apt. Ass'n of L.A. Cnty.*, 500 F. Supp. 3d at 1100; *Baptiste*, 490 F. Supp. 3d at 353; *HAPCO*, 482 F. Supp. 3d at 355–56; *Auracle Homes*, 478 F. Supp. 3d at 199; *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 172.

because the Moratorium does not: (1) undermine the contractual bargain; (2) interfere with reasonable expectations; or (3) prevent the Landlords from safeguarding or reinstating their rights. *See Sveen*, 138 S. Ct. at 1822.

First, the Moratorium does not undermine the Landlords' contractual bargain with their tenants, because the mere *delay* in the right to exercise one type of statutory remedy does not materially alter the lease agreements. *See Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 447–48 (1934) (upholding mortgage moratorium that extended mortgagor's redemption period for up to two years). The Moratorium does not eliminate or even reduce tenants' obligations to pay rent. Moreover, the Landlords can treat unpaid rent as an enforceable debt if a tenant was offered, and refused or failed to comply with, a reasonable repayment plan based on the individual financial, health, and other circumstances of that tenant. *See* Procl. 20-19.6. This is not a "blanket prohibition on treating unpaid rent as an enforceable debt." ECF No. 37 at 26. The Landlords still retain the ability to enforce the bargained-for terms of the rental contracts. *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 172 ("The eviction moratorium does not eliminate the suite of contractual remedies available to the Plaintiffs; it merely postpones the date on which landlords may commence summary proceedings against their tenants.").

Nor does the Moratorium interfere with the Landlords' reasonable expectations given the regulatory scheme governing landlord-tenant relationships. "[T]he reasonableness of expectations depends, in part, on whether . . . action was foreseeable, and this, in turn, is affected by whether the relevant party operates in a

1   heavy regulated industry." *Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54,

2   64 (2d Cir. 2020). *Cf. Loretto*, 458 U.S. at 440 (1982) (affirming in the Takings

3   context that "States have broad power to regulate housing conditions in general and

4   the landlord-tenant relationship in particular . . ." and citing as examples fire

5   regulations, a mortgage foreclosure moratorium, and rent control statutes as powers

6   the states may exercise). Significantly, the State is not inserting itself into "a field it

7   had never sought to regulate[.]" *Nw. Grocery Ass'n v. City of Seattle*, No. C21-0142-

8   JCC, 2021 WL 1055994, at *8 (W.D. Wash. Mar. 18, 2021) (quoting *Allied*

9   *Structural Steel Co. v. Spannaus*, 438 U.S. 234, 249 (1978)).

10      This pandemic has no precedent in the modern era, but residential leases have

11   been heavily regulated for many years and temporary moratoria on evictions are

12   nothing new. *See, e.g.*, *Block*, 256 U.S. at 153 (1921) (upholding law prohibiting

13   eviction of holdover tenants); *SKS & Assocs. v. Dart*, 619 F.3d 674 (7th Cir. 2010)

14   (eviction moratorium during certain winter conditions); Seattle Mun.

15   Code 22.206.160.C.8 (defense to eviction if eviction would result in tenant vacating

16   between December 1 and March 1). Such "past regulation puts industry participants

17   on notice that they may face further government intervention in the future,"

18   *Elmsford Apartment Associates*, 469 F. Supp. 3d at 169, so the Moratorium does not

19   substantially impair the Landlords' contract rights. *See also HAPCO*, 2020

20   WL 5095496, at *7 (upholding Philadelphia eviction moratorium because

21   "residential leases have been heavily regulated for many years").

22      The third factor—whether the Landlords can safeguard or reinstate their

1  rights—strongly supports the conclusion that the Moratorium does not substantially

2  impair the Landlords' contractual relationship with their tenants. The Moratorium

3  does not affect when rent is due and does not reduce or eliminate the rent obligation

4  of any tenant. The Landlords can seek to collect all they are owed if they have offered

5  their non-paying tenants a reasonable repayment plan that the tenants have refused or

6  failed to comply with. *See* Procl. 20-19-6. There remain ways for the Landlords to

7  safeguard or reinstate their rights, even while the Moratorium is in effect.

8      **2.    The Moratorium appropriately and reasonably advances a significant and legitimate public purpose**

9

10  The Court need not reach this second step because the Moratorium does not

11  substantially impair the Landlords' contractual rights. But should the Court reach the

12  second prong of the Contracts Clause test, the Moratorium also passes muster because

13  it is an "appropriate and reasonable way to advance a significant and legitimate public

14  purpose." *Sveen*, 138 S. Ct. at 1822 (cleaned up). Where, as here, the State is not a

15  party to the contracts at issue, "courts 'defer to legislative judgment as to the necessity

16  and reasonableness of a particular measure.'" *Campanelli v. Allstate Life Ins. Co.*,

17  322 F.3d 1086, 1098 (9th Cir. 2003) (quoting *Energy Rsrvs. Grp. v. Kansas Power*

18  *& Light Co.*, 459 U.S. 400, 412–13 (1983)); *see also Baptiste*, 490 F. Supp. 3d at 386

19  n.10 (noting that where the government is not a party to the contract, there must have

20  been a rational basis for the legislation that allegedly impairs contracts); *Blaisdell*,

21  290 U.S. at 447–48 ("Whether the legislation is wise or unwise as a matter of policy

22  is a question with which [the Court is] not concerned.").

1    The Landlords make no responding arguments to the State's significant and
2    legitimate purpose behind the COVID-19 emergency measure. *See* ECF No. 37 at 34.
3    The Moratorium's purposes—to "reduce economic hardship" of those "unable to pay
4    rent as a result of the COVID-19 pandemic" and "promote public health and safety
5    by reducing the progression of COVID-19 in Washington State," Procl. 20-19.6—
6    are not just significant and legitimate, but compelling. And the Moratorium's
7    provision limiting the treatment of unpaid rent as an enforceable debt helps prevent
8    "soft" or "informal" evictions—that is, measures short of unlawful detainer actions
9    that lead tenants to "self-evict" to avoid negative credit history, an adverse judgment,
10   or other collateral consequences. ECF No. 32 ¶ 17.

11       The Landlords make cursory arguments about the manner in which the
12   Moratorium achieves these significant and legitimate purposes. But there is no
13   question that the Moratorium is appropriately and reasonably tailored to the
14   emergency wrought by COVID-19. *See El Papel*, 2020 WL 8024348, at *12 (holding
15   the Landlords were unlikely to show the Moratorium violated the Contracts Clause
16   because it was "designed to address vital public interests during a national public
17   crisis"). For one, the Moratorium does not eliminate or reduce rent obligations, so
18   like in *Blaisdell*, their "indebtedness is not impaired[.]" *Blaisdell*, 290 U.S. at 447.
19   Second, although the Moratorium generally prohibits landlords from treating unpaid
20   rent "as an enforceable debt or obligation that is owing or collectable," that
21   prohibition applies only when nonpayment was "a result of the COVID-19 outbreak
22   and occurred on or after February 29, 2020." Procl. 20-19-6. That is, the Landlords

can pursue actions other than eviction to collect unpaid rent that predates or is unrelated to the pandemic. Third, the Landlords can collect *any* unpaid rent if a tenant refuses or fails to comply with an offered "re-payment plan that was reasonable based on the individual financial, health, and other circumstances of that resident." *Id.* Fourth, the Moratorium does not foreclose *all* evictions. The Landlords are permitted to evict tenants if their tenants pose a significant risk to the health, safety, or property of others, or if the Landlords seek to personally occupy the premises as a primary resident (with timely notice) or sell the property (also with timely notice). *See* Procl. 20-19.6. Fifth, the Moratorium is "temporary in operation[ ]" and limited to this emergency. *Blaisdell*, 290 U.S. at 447. For all these reasons and more, the Moratorium is appropriately and reasonably tailored. It strikes a balance between property owners and tenants; it is "not for the mere advantage of particular individuals but for the protection of a basic interest of society[,]" that is, to prevent mass evictions and the spread of COVID-19. *Id.* at 445.

The Landlords continue to complain that the Moratorium does not impose a certification requirement like the CDC moratorium. ECF No. 37 at 34. The *El Papel* court has already rejected a similar argument. 2020 WL 8024348, at *10–11. The question is not whether alternatives might exist, but whether the governmental choice meets constitutional standards. The Landlords' policy prescription ignores the deference due to the Governor's judgment as to the Moratorium's reasonableness. *Energy Rsrvs. Grp.*, 459 U.S. at 412–13. It also ignores that the Moratorium need not be narrowly tailored or the least burdensome means to prevent the spread of COVID-

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    19 and mitigate housing instability. *See El Papel*, 2020 WL 8024348, at \*10 ("The

2    law should be tailored to the emergency justifying its enactment—although it need

3    not be a perfect fit.").

4        Finally, while the epidemiologic curve is trending down, the coronavirus

5    pandemic is not over. As of June 21, 2021, data shows that 57.3% of the 12 and over

6    population is fully vaccinated, and the vaccine is currently available only for those

7    12 years of age and older. *See* Wash. State Dep't of Health, COVID-19 Data

8    Dashboard, https://www.doh.wa.gov/Emergencies/COVID19/DataDashboard (last

9    visited June 24, 2021). Those at risk of eviction are disproportionately less likely to

10    be vaccinated. *See* Jennifer Tolbert, et al., *Vaccination is Local: COVID-19*

11    *Vaccination Rates Vary by County and Key Characteristics*, Kaiser Family Found.

12    (May 12, 2021), https://bit.ly/3xOKg7k (finding higher county uninsured and

13    poverty rates associated with lower vaccination rates) (Second Sepe Decl., Ex. Q). A

14    significant percentage of renter households who have fallen behind on rent have

15    children, many of whom cannot get vaccinated yet. ECF No. 32-2, Ex. N (finding

16    eviction risk disproportionately impacting renters with children). The State continues

17    to encourage the public to take precautions, particularly those who are not yet

18    vaccinated against COVID-19.

19        Undeniably, many Washingtonians continue to experience financial hardships

20    due to the pandemic and that the State's economic and public health recovery is

21    fragile. There remains a need for a temporary pause on evictions until E2SSB 5160,

22    which provides tenant protections during and after the public health emergency, and

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  perhaps rental assistance programs are fully operationalized.[5] Economic recovery

2  takes time, and many tenants cannot pay full rent while the State carefully reopens.

3  *See* ECF No. 32-1, Ex. N (up to 789,000 Washingtonians at risk of eviction without

4  moratorium), Ex. Z (265,000 Washington state households have little to no

5  confidence in ability to make next month's rent).

6          This Court should hold the Moratorium does not violate the Contracts Clause.

7  **D.     The Moratorium Does Not Violate Substantive Due Process**

8          Contemporary precedent, ignored by the Landlords, is highly deferential to

9  government actions in the face of substantive due process challenges and do not

10  include an "unduly oppressive" inquiry. Instead, substantive due process is met by

11  showing that a rational public purpose justifies the regulation. *See Pension Ben.*

12  *Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984) ("[L]egislative Acts

13  adjusting the burdens and benefits of economic life come to the Court with a

14  presumption of constitutionality, and that the burden is on one complaining of a due

15  process violation to establish that the legislature has acted in an arbitrary and

16  irrational way.") (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15

17  (1976)); *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997) ("Where a

18  fundamental right is not implicated, as in this case, governmental action need only

19  have a rational basis to be upheld against a substantive due process attack.").

20  _____

21          [5] *See also* Jason DeParle, *Federal Aid to Renters Moves Slowly, Leaving Many*

22  *at Risk*, N.Y. Times (updated May 4, 2021), https://nyti.ms/35PYkl3.

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

For the reasons the Moratorium furthers a significant and legitimate public purpose in an appropriate and reasonable way, *supra* pp. 19–23, the Moratorium is not irrational. *See Blaisdell*, 290 U.S. at 447–48; *HAPCO*, 482 F. Supp. 3d at 356.

The Landlords do not cite any case law that would hold their economic interests as fundamental rights, thus triggering heightened scrutiny. And for good reason. "Such a holding would propel [the Court] "back to what is referred to (usually deprecatingly) as 'the *Lochner* era.'" *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (plurality opinion); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 545 (2005) (noting the Court has "long eschewed such heightened scrutiny when addressing substantive due process challenges to government regulation").[6]

Next, assuming that the void for vagueness doctrine applied, the Moratorium is not impermissibly vague. It gives courts flexibility; in evaluating whether a repayment plan was reasonable, courts look to the tenant's "financial, health, and other circumstances of that resident." Procl. 20-19.6. The Landlords contend that this

---

[6] The Landlords' "unconstitutional conditions" argument does not support their due process claim either. *See Zepeda Rivas v. Jennings*, 845 F. App'x 530, 534 (9th Cir. 2021) (addressing unconstitutional conditions of *confinement* for civil immigration detainees); *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987) (whether development exaction violated the Takings clause); *Dolan v. City of Tigard*, 512 U.S. 374 (1994) (whether land use regulation violated the Takings clause).

1  is an "impossible procedure," ECF No. 37 at 40, but courts are free to evaluate the

2  behaviors of the tenant and landlord in evaluating whether the plan was reasonable.

3  *Cf.* Second Sepe Decl., Ex. O at 41:7-11. The Moratorium is not vague, as

4  considerations for reasonableness provide "fair notice" to the Landlords of what is

5  expected. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

6       Finally, because the Moratorium is not arbitrary, the Landlords are unable to

7  pursue a substantive due process claim where other constitutional provisions provide

8  an explicit textual source of constitutional protection. *See Graham v. Connor*, 490

9  U.S. 386, 395 (1989); *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (four-Justice

10  plurality), *id.* at 281 (Kennedy, J., concurring in judgment); *Stop the Beach*

11  *Renourishment*, 560 U.S. at 721.

12  **E.    Plaintiffs Are Not Entitled to Declaratory Relief Under § 1983**

13       Because the Landlords' claims under the Contracts, Takings, and Due Process

14  Clauses fail as a matter of law, they are not entitled to relief under § 1983.

15  **III.   CONCLUSION**

16       The COVID-19 pandemic has brought devastating public health and economic

17  consequences, but the Moratorium has been a critical—and constitutional—tool to

18  reduce the transmission of COVID-19 and housing instability. The Court should

19  sustain the Moratorium, enter summary judgment in favor of the State, and dismiss

20  the Landlords' claims with prejudice.

21      //

22      //

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

DATED this 25th day of June, 2021.

                    ROBERT W. FERGUSON
                    Attorney General


                    *s/ Cristina Sepe*
                    CRISTINA SEPE, WSBA #53609
                    ZACHARY PEKELIS JONES, WSBA #44557
                    BRIAN H. ROWE, WSBA #56817
                    Assistant Attorneys General
                    JEFFREY T. EVEN, WSBA #20367
                    Deputy Solicitor General
                    800 5th Avenue, Ste. 2000
                    Seattle, WA  98104
                    (206) 474-7744
                    cristina.sepe@atg.wa.gov
                    zach.jones@atg.wa.gov
                    brian.rowe@atg.wa.gov
                    jeffrey.even@atg.wa.gov
                    *Attorneys for Defendants*

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

# DECLARATION OF SERVICE

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 25th day of June, 2021, at Tacoma, Washington.

*s/ Cristina Sepe*
Cristina Sepe, WSBA #53609
Assistant Attorney General
800 5th Avenue, Ste. 2000
Seattle, WA 98104
(206) 474-7744
cristina.sepe@atg.wa.gov

DEFENDANTS' REPLY ISO
CROSS-MSJ
NO. 1:20-cv-03182-SAB

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744