Richard M. Stephens
STEPHENS & KLINGE LLP
10900 NE 4ᵀᴴ Street, Suite 2300
Bellevue, WA 98004
425-453-6206

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON
AT YAKIMA

| | |
|---|---|
| ENRIQUE JEVONS, as managing member of Jevons Properties LLC, FREYA K. BURGSTALLER, as trustee of the Freya K. Burgstaller Revocable Trust, JAY GLENN and KENDRA GLENN,<br><br>Plaintiffs,<br><br>vs.<br><br>JAY INSLEE, in his official capacity as Governor of the State of Washington and ROBERT FERGUSON, in his official capacity of the Attorney General of the State of Washington,<br><br>Defendants. | No. 1:20-cv-03182-SAB<br><br>**Plaintiffs' Supplemental Brief re** *Cedar Point Nursery* |

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 1

STEPHENS & KLINGE LLP
10900 NE 4ᵗʰ Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

# INTRODUCTION

Plaintiffs file this supplemental brief to address the June 23, 2021 decision of the United States Supreme Court in *Cedar Point Nursery v. Hassim*, ___ U.S. ___, 141 S.Ct. 2063 (2021) and its effect on the pending cross motions for summary judgment. *Cedar Point Nursery* concerns the taking of property by physical occupation, an issue Plaintiffs raise in their complaint and pending motion. The parties have agreed to and the court has approved the briefing schedule for this supplemental brief. ECF 46.

# ARGUMENT

## I
### *Cedar Point Nursery* supports Plaintiffs' claim that the inability to remove tenants in violation of their leases causes a taking of Plaintiffs' property by requiring Plaintiffs to endure a physical occupation.

As addressed in the prior summary judgment briefing, Plaintiffs allege that the Governor's Proclamations which prohibit eviction and prohibit treating nonpayment of rent as debt constitute an uncompensated mandatory physical occupation of Plaintiffs' property and, therefore, a *per se* taking of property. Like the plaintiff in *Cedar Point Nursery*, Plaintiffs do not seek an award of compensation in this case, but seek a declaration that a taking has occurred by requiring Plaintiffs to house tenants indefinitely without payment of rent or any other recourse.[1]

---

[1] A taking is not invalid as long as just compensation is eventually paid. *First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 315

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 1

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

The high Court in *Cedar Point Nursery* evaluates California statutes requiring a property owner to grant physical access to union organizers on private property for three hours per day, 120 days per year, for the purpose of soliciting employees to join or form a union. *Cedar Park Nursery,* 141 S.Ct. at 2069. The plaintiff nursery argued that the California law mandated a physical occupation of its property and that the law caused a *per se* taking. *Id.* The Supreme Court agrees. *Id.* at 2075.

*Cedar Point Nursery* recounts the deep history of protecting the rights of individuals in their property, citing both treatises from the 1800s to cases spanning the 20th and 21st centuries. *Id.* at 2071-72. Based on this history, the Supreme Court's conclusion is that government takes property when it requires a property owner to submit to a physical occupation, no matter how small or how intermittent. *Cedar Point Nursery,* 141 S.Ct. at 2084. "The duration of an appropriate—just like the size of an appropriation, ... bears only on the amount of compensation." *Id.* at 2074 (citation omitted).

The Court also distinguished (*id.* at 2076) the situation in *Pruneyard Shopping Center v. Robins,* 447 U.S. 74 (1980), where the Court found no taking caused by requiring a shopping center, open to the public, to allow

---

(1987). Because the taking is presumably temporary, the compensation would likely be the fair rental value of the leasehold. *See Kimball Laundry Co. v. United States,* 338 U.S. 1, 7 (1949); *First English,* 482 U.S. at 319.

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 2

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

leafleting. In contrast, Plaintiffs' properties are not open to the public, but only to tenants who agree to conditions upon occupying the property.

The Supreme Court relies on several examples from its history of evaluating the taking of property by physical occupation, such as those in the context of a taking of airspace. "[W]hen [government] planes use private airspace to approach a government airport, [the government] is required to pay for that share no matter how small." *Id.* at 2077-78 (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 322 (2002) (citing *United States v. Causby*, 328 U.S. 256 (1946))). This is consistent with cases in other contexts. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (requiring occupation of a small cable wire). A mandated physical occupation constitutes a taking requiring compensation.

The conclusion that a physical occupation is a taking is based on well-established principles, such as the essential role the right to exclude others plays in the nature of what property is. For instance,

> [t]he right to exclude is "one of the most treasured" rights of property ownership ... "one of the most essential sticks in the bundle of rights that are commonly characterized as property" .... [and] the right to exclude is the "sine qua non" of property.

*Cedar Point Nursery,* 141 S.Ct. at 2072-73 (citations omitted).

In light of the primacy of the right to exclude, the Court echoes the longstanding rule that a regulation that authorizes a physical invasion of private property is a *per se* taking. *Id.* at 2073. Unlike the lower court, the Supreme Court held a taking occurred despite the absence of a "permanent and

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 3

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

continuous" physical occupation. *Id.* at 2074. The Court specifically rejected the notion that the failure of the invasion to run "around the clock" made the taking any less. *Id.* at 2075. *Cedar Point Nursery* applies here.

The notion that the failure of the eviction moratorium to last in perpetuity—or be permanent as Defendants have argued (ECF 40, at 15, 16)—is similarly no less of a taking of property. This is true regardless of the validity or importance of authorizing or requiring the physical occupation or whether the physical occupation is permanent. One of the most essential sticks has been taken.

The *Cedar Point Nursery* decision also makes clear that physical occupations of property are not to be governed by the multi-factor test in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 204 (1978), *cited in Cedar Point Nursery*, 141 S.Ct. at 2077. Defendants previously argued that temporary physical invasions should be assessed under *Penn Central.* ECF 30 at 35. *Cedar Point Nursery* now forecloses Defendants' argument.

In response to the dissent, the majority in *Cedar Point Nursery* articulates three narrow categories of physical invasions that are potentially unlikely to result in a taking under the Fifth Amendment. The first was mere trespass. "Isolated physical invasions, not undertaken pursuant to a right of access, are properly assessed as individual torts rather than appropriation of a property right." *Id.* at 2078. The majority specifically referred to the Federal Circuit's example in *Hendler v. United States*, 952 F.2d 1364, 1377 (Fed. Cir. 1991), identifying a "truckdriver parking on someone's vacant land to eat lunch" as an example of a mere trespass. *Cedar Point Nursery,* 141 S.Ct. at 1078. In the

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 4

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

present case, the ongoing occupation goes far beyond trespass. The tenants occupying Plaintiffs' properties for many months without paying rent and in violation of their leases without recourse is not a mere trespass. Therefore, this first exception does not save the Governor's Proclamations from the compensation requirement of the Fifth Amendment.

The second category of physical invasions that are less likely to constitute a taking are those consistent with longstanding background restrictions on property rights, such as abating a nuisance which no one has the right to cause. *Id.* at 2079. The Court in *Cedar Point Nursery* also cited the Restatement (Second) of Torts § 196 (1964) for the "privilege to enter property in the event of a public or private necessity" or "to effect an arrest." 141 S.Ct. at 2079. Examples include the right to escape to safety on someone else's property,[2] destroying buildings to arrest a fire,[3] and damaging property to reduce the impact of a flood.[4] These too are isolated invasions, not undertaken pursuant to a granted right of access or occupation.

---

[2] *See Rossi v. Delducas,* 344 Mass. 66, 70, 181 N.E.2d 591, 593 (1962) (child entering another's property to escape an ominous dog); *Brigham City v. Stuart,* 547 U.S. 398 (2006) (entering property to save injured person).

[3] *McDonald v. City of Red Wing,* 13 Minn. 38 (1868) (destroying buildings to stop a fire when the destroyed building was likely to burn anyway).

[4] *Short v. Pierce County,* 194 Wash. 421 (1938) (property damaged to control flood).

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 5

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

Additionally, compensation is not required in this limited exception for special reasons. One is that property destroyed to stop a fire was subject to immediate peril and would have burned in the conflagration anyway. Property that would be captured or destroyed by the enemy in war, or rendered useless by disease[5] can be destroyed without compensation being paid. From a principled standpoint, no compensation was required because the property was already doomed. Or the physical invasion was momentary, like escaping the vicious dog, intruding to help an injured person or to arrest a criminal suspect.[6]

Unlike the call for instantaneous decision-making with little time to weigh options in dealing with fire or other truly emergent conditions or the momentary intrusions, the Proclamations at issue here were the result of a deliberative process and reviewed (and reissued) every few months. These are not isolated instances and the Proclamations grant the right of tenants to remain even though they are in violation of their leases. Forcing Plaintiffs to allow people to reside in Plaintiffs' property rent-free for over a year and counting is

---

[5] *Cf. State Plant Board v. Smith*, 110 So.2d 401 (Fla.1959) (destruction of diseased trees not a taking) with *Department of Agriculture and Consumer Service v. Mid-Florida Growers, Inc.*, 521 So.2d 101, 105 (1988) (destruction of healthy trees to protect other trees is a taking).

[6] *Wegner v. Milwaukee Mut. Ins. Co.*, 479 N.W.2d 38, 41-42 (Minn. 1991) (apprehending armed suspect in private home).

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 6

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

not akin to running to safety in an emergent situation that demands instantaneous decision-making.

To conclude that physical occupations required no payment of compensation just because the government declared an emergency would cause the exception to swallow the rule. Presumably, all regulation of property has a health or safety underpinning. But modern takings jurisprudence recognizes that people should not be forced "to bear the public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960), *quoted in Lingle v. Chevron Corp.*, 544 U.S. 528, 537 (2005).

For instance, to alleviate another problem—homelessness—government cannot order those with unused rooms in their home to house a homeless person without compensation and be consistent with the rationale of either *Cedar Point Nursery* or *Armstrong,* the latter recognizing the purpose of the just compensation component of the Fifth Amendment is place the burden of addressing public needs on the public as whole. *Armstrong,* 364 U.S. at 49.

The third category of physical invasions less likely to cause a taking are where the government requires access as a condition of receiving governmental benefits. *Cedar Point Nursery,* 141 S.Ct. at 2079. Of course, the state has given no permit to engage in rental housing and certainly no upfront condition that tenants be allowed to stay rent free for months on end. But the Supreme Court explained further the narrowness of this last exception. "[B]asic and familiar uses of property" are not a special benefit that "the Government may hold

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 7

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206

hostage to be ransomed by the waver of constitutional protection." *Id.* at 2080 (quoting *Horne v. Department of Agriculture*, 576 U.S. 350, 366 (2015)). Renting property for residential uses is a basic and familiar use of property given its existence from time immemorial, not a government benefit granted to property owners.

## Conclusion

The Supreme Court decision in *Cedar Park Nursery* is an important reaffirmation of the basic constitutionally protected right of people to exclude others from their property—one of the most essential sticks in the bundle of rights. While that right may be taken away, the consequence is that the public must eventually pay just compensation for the taking. *Cedar Point Nursery* supports Plaintiffs' claim that the Governor's Proclamations have caused a taking by mandating that Plaintiffs keep nonpaying tenants in their property and, as a practical matter, preventing Plaintiffs from ever collecting rent for this time period. The Court should declare that just compensation is the constitutionally mandated remedy.

Respectfully submitted this 14th day of July, 2021,

        Stephens & Klinge LLP
        */s/ Richard M. Stephens*
        WSBA No. 21776
        Stephens & Klinge LLP
        10900 NE 4th Street, Suite 2300
        Bellevue, WA 98004
        stephens@sklegal.pro
        425-453-6206
        Attorneys for Plaintiffs

Pls. Supp. Brief re *Cedar Point Nursery*
1:20-cv-03182-SAB 8

STEPHENS & KLINGE LLP
10900 NE 4th Street, Suite 2300
Bellevue, WA 98004
(425) 453-6206