CRISTINA SEPE, WSBA #53609
BRIAN H. ROWE, WSBA #56817
Assistant Attorneys General
JEFFREY T. EVEN, WSBA #20367
Deputy Solicitor General
800 5th Avenue, Ste. 2000
Seattle, WA 98104
(206) 474-7744

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON
## AT YAKIMA

| | |
|---|---|
| ENRIQUE JEVONS, as managing member of Jevons Properties LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAY INSLEE, in his official capacity of the Governor of the State of Washington, et al.<br><br>Defendants. | NO. 1:20-cv-03182-SAB<br><br>DEFENDANTS' SUPPLEMENTAL BRIEF RE: *CEDAR POINT NURSERY V. HASSID*, 141 S. CT. 2063 (2021)<br><br>NOTED FOR: Aug. 24, 2021 at 10:30 a.m.<br><br>*With Oral Argument* |

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

## I. INTRODUCTION

State Defendants file this supplemental brief to discuss the effect of *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), which was decided after the parties briefed their cross-motions for summary judgment. In a 6-3 decision, the Supreme Court held that a California regulation granting labor organizations a "right to take access" to agricultural employers' property to solicit support for unionization constitutes a *per se* physical taking under the Fifth Amendment. In this case, Plaintiffs want to stop the now-expired Evictions Moratorium, contending in part that the Moratorium violates the Takings Clause. But *Cedar Point Nursery* does not change the Supreme Court's prior holdings that regulations restricting the use of property without a physical invasion of land—especially when that use is premised on the owner's voluntary invitation to an occupant—are not *per se* takings. Nor did the case circumscribe the State's authority to regulate housing conditions and the landlord-tenant relationship. *Cedar Point Nursery* does not preclude the Court from granting summary judgment in favor of the State on the Landlords' Takings Clause claim.

## II. ARGUMENT

*Cedar Point Nursery* evaluated a California regulation requiring agricultural employers to give union organizers a "right to take access" to their private property to organize farmworkers. 141 S. Ct. at 2069 (quoting Cal. Code Regs., tit. 8, § 20900(e)(1)(C) (2020)). The regulation required employers to allow organizers on their property 120 days per year, for up to 3 hours each day. *Id*. Two agricultural

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

employers sought to enjoin California's Agricultural Relations Board from enforcing the access regulation, arguing that the regulation was a *per se* physical taking "by appropriating without compensation an easement for union organizers to enter their property." *Id.* at 2070.

The outcome of *Cedar Point Nursery* turned on whether the Court viewed the California access regulation as a *per se* physical taking or a regulatory taking (under which compensation is required only if the restriction goes too far). The Court held that the California access regulation was a *per se* physical taking because it did not merely restrict how the owner used its own property, but it appropriated the owner's "right to exclude" for the government itself or for third parties by granting labor organizers the right to physically enter and occupy the land for periods of time. *Id.* at 2072 ("[T]he regulation appropriates for the enjoyment of third parties the owners' right to exclude.").

*Cedar Point Nursery* does not disturb Supreme Court precedent that "statutes regulating the economic relations of landlords and tenants are not *per se* takings." *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987). Here, the Moratorium regulates the Landlords' "*use* of their land by regulating the relationship between landlord and tenant." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 528 (1992). "[The] Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Id.* at 528-29 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982));

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   *see id.* at 529 (explaining that when a landowner decides to rent to tenants, the government can impose rent control measures or require the landlord to accept tenants he does not like "without automatically having to pay compensation") (citing *Pennell v. City of San Jose*, 485 U.S. 1, 12 n.6 (1988), and *Heart of Atlanta Motel, Inc. v. United States*, 349 U.S. 241, 261 (1964)).

      In *Cedar Point Nursery*, the Court recounted other takings cases to support its holding. For example, in *Loretto v. Teleprompter Manhattan CATV Corp.*, the Court held that any regulation that authorizes a permanent physical invasion of property qualified as a taking. 458 U.S. 419 (1982). In *Cedar Point Nursery*, the Court clarified that *Loretto* did not compel the Court to hold that the access regulation was not a *per se* physical taking though the invasion was intermittent and non-continuous rather than permanent and ongoing. *Id.* at 2074. Instead, the key to the taking in *Loretto* was the physical invasion itself. *Id.* at 2074–75. So while the size, duration, and frequency of the physical invasion may bear on the amount of compensation due, those factors do not alter the classification of a *per se* taking. *Id.* at 2075 ("The fact that a right to take access is exercised only from time to time does not make it any less a physical taking.").

      As to regulatory takings, *Cedar Point Nursery* acknowledged that if the government did not appropriate private property for itself or a third party, but instead "restrict[s] an owner's ability to use his own property, a different standard applies." *Id.* at 2071. Restrictions that go "too far" effect a taking, and to determine whether a use restriction effects a taking, courts generally apply "the flexible test developed in

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1 | *Penn Central*, balancing factors such as the economic impact of the regulation, its
2 | interference with reasonable investment-backed expectations, and the character of the
3 | government action." *Id.* at 2072 (citing *Penn Cent. Transp. Co. v. City of New York*,
4 | 438 U.S. 104, 124 (1978)).

5 |     Ultimately, because the California access regulation authorized uninvited third
6 | parties to physically invade and occupy agricultural employers' properties, the
7 | regulation amounted to the government having taken a property interest like a
8 | servitude or easement, which has historically been treated as a *per se* physical taking.
9 | *See id.* at 2073–74. The Court further clarified that the physical invasion need not
10 | match precisely the definition of "easement" under state law to qualify as a taking.
11 | *Id.* at 2076.

12 |     Material to this case, *Cedar Point Nursery* distinguished between laws that
13 | regulate how landowners must treat those they have already invited onto their land
14 | and laws that permitted third-party invasions: "Limitations on how a business
15 | generally open to the public may treat individuals on the premises are readily
16 | distinguishable from regulations granting a right to invade property closed to the
17 | public." *Id.* at 2077. Based on *Yee v. City of Escondido*, 503 U.S. 519, the same is
18 | true for rental property: Limitations on how a landlord may treat tenants they have
19 | voluntarily invited onto their properties by renting to them are readily distinguishable
20 | from regulations granting a right to invade property closed to the public. *See Yee*,
21 | 503 U.S. at 527–28, 531.
22 |

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

Central to the decision in *Yee* was the fact that the landlords had voluntarily invited tenants onto the property. *See* 503 U.S. at 531 ("Because they voluntarily open their property to occupation by others, petitioners cannot assert a *per se* right to compensation based on their inability to exclude particular individuals."); *id.* at 527 ("Petitioners voluntarily rented their land to mobile home owners."); *id.* at 528 ("Petitioners' tenants were invited by petitioners, not forced upon them by the government.").

Here, as in *Yee*, the Landlords' tenants "were invited by [the landlords], not forced upon them by the government." *Id* at 528. And like the law challenged in *Yee*, the Moratorium does not force a landlord to "refrain in perpetuity from terminating a tenancy," and allows the Landlords to evict tenants if they wish to "change the use of their land." *Id.* The Moratorium is a temporary regulation of the landlord-tenant relationship that temporarily prohibits eviction as a particular remedy for nonpayment of rent. It effects no *per se* physical taking.

Likewise, in *F.C.C. v. Florida Power Corporation*, the Court rejected an argument that a utility rate ceiling was a *per se* physical taking—explaining that the law did not give companies any rights to occupy space on utility poles. In distinguishing the case from *Loretto*, the Court stated: "it is the invitation, not the rent, that makes the difference." 480 U.S. at 252; *see also id.* at 252–53 ("The line which separates these cases from *Loretto* is the unambiguous distinction between a commercial lessee and an interloper with a government license.").

DEFENDANTS' SUPPLEMENTAL BRIEF RE: *CEDAR POINT NURSERY V. HASSID*, 141 S. CT. 2063 (2021) NO. 1:20-cv-03182-SAB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

*Cedar Point Nursery* does not overrule *Yee* or undermine the legal underpinnings of *Yee*. In fact, it cited *Yee* for general takings principles. *See* 141 S. Ct. at 2072. And again, *Cedar Point Nursery* pointed out the difference between laws regulating those who have been invited onto private property and laws that give third parties the right to enter private property. *Id.* at 2077 ("Limitations on how a business generally open to the public may treat individuals on the premises are readily distinguishable from regulations granting a right to invade property closed to the public.").

Because of this distinction, decisions like *Cedar Point Nursery* and the cases cited therein—where the government has appropriated property for itself or imposed a servitude or easement causing the owner to suffer an invasion—do not help the Landlords' Takings Clause claim here. *See, e.g.*, *Cedar Point Nursery*, 141 S. Ct. at 2074 (holding the regulation appropriated a right to physically invade the growers' property by allowing uninvited "union organizers to traverse it at will for three hours a day, 120 days a year"); *United States v. Causby*, 328 U.S. 256, 265–66 (1946) (military aircraft that flew low on private property, causing damage, "were the product of a direct invasion of [the] domain" imposing a servitude on the land); *Kaiser Aetna v. United States*, 444 U.S. 164, 180 (1979) (imposition of public navigation servitude would "result in an actual physical invasion of the privately owned marina" by members of the public); *Loretto*, 458 U.S. at 423–24 (installation of cable equipment on private property was a compensable taking); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831 (1987) (explaining that if the

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1     government required the petitioners "to make an easement across their beachfront
2     available to the public on a permanent basis," it would be a taking); *Horne v.*
3     *Dep't of Agric.*, 576 U.S. 350, 362 (2015) (law that required raisin growers to turn
4     over percentage of crop without charge "for the Government's control and use" is a
5     physical taking). While *Cedar Point Nursery* announced that a non-continuous,
6     intermittent easement created by California's access regulation effects a *per se*
7     physical taking, it did not undermine the long-standing principle that "[t]he
8     government effects a physical taking only where it *requires* the landowner to submit
9     to the physical occupation of his land." *Yee*, 503 U.S. at 527.

        The Landlords' example on homelessness illustrates this difference. *See* ECF No. 48 at 8. They argue that the "government cannot order those with unused rooms in their home to house a homeless person without compensation." *Id.* A crucial distinction in that example and the case at hand is that the Landlords voluntarily rented their properties to their tenants and invited those tenants onto their land.

### III. CONCLUSION

        *Cedar Point Nursery* affirms that there are limits to a government's power to mandate public access to private property. The State Moratorium does not transgress that limit. The Moratorium regulates the relationship between the landlords and tenants—individuals who the Landlords voluntarily invited onto their properties. It does not appropriate a right to invade the Landlords' property. *Cedar Point Nursery* affirms precedent, holding that the scope of *per se* takings does not include regulations which merely restrict the use of property without physically invading the land, including

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

regulations on the landlord-tenant relationship. The Court should grant summary judgment to the State on the Landlords' Takings Clause claim and on all other claims.

DATED this 22nd day of July, 2021.

ROBERT W. FERGUSON
Attorney General

*s/ Cristina Sepe*
CRISTINA SEPE, WSBA #53609
BRIAN H. ROWE, WSBA #56817
Assistant Attorneys General
JEFFREY T. EVEN, WSBA #20367
Deputy Solicitor General
800 5th Avenue, Ste. 2000
Seattle, WA 98104
(206) 474-7744
cristina.sepe@atg.wa.gov
brian.rowe@atg.wa.gov
jeffrey.even@atg.wa.gov
*Attorneys for Defendants*

DEFENDANTS' SUPPLEMENTAL
BRIEF RE: *CEDAR POINT NURSERY
V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# DECLARATION OF SERVICE

I hereby declare that on this day I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System which will serve a copy of this document upon all counsel of record.

DATED this 22nd day of July, 2021, at Tacoma, Washington.

*s/ Cristina Sepe*
Cristina Sepe, WSBA #53609
Assistant Attorney General
800 5th Avenue, Ste. 2000
Seattle, WA 98104
(206) 474-7744
cristina.sepe@atg.wa.gov

DEFENDANTS' SUPPLEMENTAL BRIEF RE: *CEDAR POINT NURSERY V. HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744