1  CRISTINA SEPE, WSBA #53609
   BRIAN H. ROWE, WSBA #56817
2  Assistant Attorneys General
   JEFFREY T. EVEN, WSBA #20367
3  Deputy Solicitor General
   800 5th Avenue, Ste. 2000
4  Seattle, WA  98104
   (206) 474-7744

5

6              **UNITED STATES DISTRICT COURT**
           **EASTERN DISTRICT OF WASHINGTON**
7                    **AT YAKIMA**

8  ENRIQUE JEVONS, as managing          NO. 1:20-cv-03182-SAB
   member of Jevons Properties LLC,
9  et al.,                              DEFENDANTS'
                                        SUPPLEMENTAL REPLY
10            Plaintiffs,               BRIEF RE: *CEDAR POINT
                                        NURSERY V. HASSID*,
11    v.                                141 S. CT. 2063 (2021)

12 JAY INSLEE, in his official          NOTED FOR: Aug. 24, 2021,
   capacity of the Governor of the      at 10:30 a.m.
13 State of Washington, et al.
                                        *With Oral Argument*
14            Defendants.

15

16

17

18

19

20

21

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

## I.    INTRODUCTION

*Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), does not control the Takings Clause analysis for the now-expired moratorium on evictions. There, the California access regulation—which gave outside labor organizers "a right to take access" to agricultural employers' property—was a *per se* physical taking; it appropriated property owners' "right to exclude" for the government itself or for third parties. *Cedar Point Nursery*, 141 S. Ct. at 2072. Here, the Moratorium did not give uninvited third parties "a right to take access" or invade the Landlords' properties. The Landlords voluntarily invited tenants by renting their units, and the Moratorium temporarily regulated rental relationships by prohibiting the Landlords from expelling their tenants for non-payment of rent. The State did not effect a *per se* taking. The Court should accordingly grant summary judgment to the State on the Takings Clause claim (and all claims).

## II.    ARGUMENT

The Landlords make three arguments in their supplemental reply brief, ECF No. 55, that mischaracterize precedent and the Moratorium. None of their arguments change this overarching point: For purposes of the Takings Clause, controlling precedent distinguishes between (a) regulations governing the relationship between property owners and those they have voluntarily invited onto their property, from (b) regulations that grant the public the right to invade private property. *See Cedar Point Nursery*, 141 S. Ct. at 2077; *Yee v. City of Escondido*, 503 U.S. 519, 531 (1992).

DEFENDANTS' SUPPLEMENTAL REPLY
BRIEF RE: *CEDAR POINT NURSERY V.
HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1          First, the Landlords try to escape *F.C.C. v. Florida Power Corporation* and

2    *Yee v. City of Escondido* by cabining the cases as mere rent control challenges. *See*

3    ECF No. 55 at 2. But in *Yee*, the petitioners challenged a rent control law for mobile

4    homes in conjunction with another law that "limit[ed] the bases upon which a park

5    owner may terminate a mobile home owner's tenancy." 503 U.S. at 524. The

6    petitioners argued that the regime of regulations effected a physical taking,

7    contending "what has been transferred from park owner to mobile home owner is no

8    less than a right of physical occupation of the park owner's land." *Id.* at 527. The

9    Supreme Court rejected the park owners' argument, holding that it could not be

10   squared with prior cases on physical takings, which occur only when the government

11   "*requires* the landowner to submit to the physical occupation of his land." *Id.* The

12   Court held that the rent control ordinance—"even considered against the backdrop"

13   of the residency law—"[did] not authorize an unwanted physical occupation of

14   petitioners' property." *Id.* at 532. Instead, the ordinance regulated the "petitioners'

15   *use* of their property, and thus [did] not amount to a *per se* taking." *Id.*

16         The Landlords also misconstrue the State's position as "mandat[ing] that

17   Plaintiffs house their nonpaying and lease breaking tenants indefinitely." ECF No. 55

18   at 3. This is also wrong. As *Yee* stated, and the State has readily acknowledged, "[a]

19   different case would be presented were the statute, on its face or as applied, to compel

20   a landowner over objection to rent his property or to refrain in perpetuity from

21   terminating a tenancy." *Yee*, 503 U.S. at 528; *see* ECF No. 40 at 19. This is not that

22   case: The Landlords "invited" and "voluntarily rented" their units to renters. 503 U.S.

DEFENDANTS' SUPPLEMENTAL REPLY
BRIEF RE: *CEDAR POINT NURSERY V.
HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    at 527–28. The Moratorium did not continue in perpetuity, and it allowed the

2    Landlords to "change the use" of their land if they sought to sell or occupy the

3    property themselves. *Id.* at 528; *see* Procl. 20-19.6. The Moratorium also permitted

4    the Landlords to evict or terminate a tenancy "when necessary to respond to a

5    significant and immediate risk to the health, safety, or property of others created by

6    the resident." Procl. 20-19.6.

7         Second, the Landlords misunderstand the State's argument about property that

8    owners voluntarily open for occupation by others. *See* ECF No. 55 at 4–5. The State's

9    argument is that, based on the principles stated in *Cedar Point Nursery* and *Yee*,

10    regulations on how people treat those whom they have *invited* onto their properties

11    are distinguishable from regulations "granting a right to invade property closed to the

12    public." ECF No. 52 at 4 (quoting *Cedar Point Nursery*, 141 S. Ct. at 2077). Like the

13    private property owners in *Yee*, the Landlords "voluntarily open their property to

14    occupation by others," so they "cannot assert a *per se* right to compensation based on

15    their inability to exclude particular individuals." *Yee*, 503 U.S. at 531.

16         Third, the Landlords contend "[t]here is no principled reason for concluding

17    that property is not taken" based on their voluntary invitation of tenants to their

18    properties. ECF No. 55 at 5. But this invitation is central to the Court's holdings that

19    the challenged laws in *Florida Power* and *Yee* did not effect *per se* takings. *See Yee*,

20    503 U.S. at 528 ("Petitioners' tenants were invited by petitioners, not forced upon

21    them by the government."); *F.C.C. v. Fla. Power Corp.*, 480 U.S. 245, 252–53 (1987)

22    (explaining that the public utility landlords "voluntarily entered into leases with cable

DEFENDANTS' SUPPLEMENTAL REPLY
BRIEF RE: *CEDAR POINT NURSERY V.
HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1   company tenants" and distinguishing "between a commercial lessee and an interloper

2   with a government license").

3        Instructive here, a federal district court has already treated *Cedar Point*

4   *Nursery* as distinguishable in evaluating an eviction moratorium in place in San

5   Diego County. *See S. Cal. Rental Housing Ass'n v. County of San Diego*,

6   No. 3:21CV912-L-DEB, 2021 WL 3171919, at *8 (S.D. Cal. July 26, 2021). The

7   court held that the plaintiff had not shown a likelihood of success on the merits on its

8   Contracts Clause and Takings Clause claims, *see id.* at *4–9, and explained why

9   *Cedar Point Nursery* did not control the Takings Clause analysis:

> Unlike the landowners in *Cedar Point* who were forced to allow
> unionizing activity on their property for a specified amount of time, the
> landowners here invited the renters to inhabit their rental units, make
> them their homes, and abide by the rental agreements. No "physical
> invasion" has occurred here. Although renters cannot be evicted during
> the temporary duration of the Ordinance, landlords have not lost their
> right to exclude as did the owners in *Cedar Point*.

14  *Id.* at *8. The same holds true here. The Landlords—like the property owners in

15  *Southern California Rental Housing Association*—invited their tenants onto their

16  properties. Those tenants were not forced upon the Landlords by the State. And the

17  Landlords have not lost their right to exclude.

### III.   CONCLUSION

19       *Cedar Point Nursery* does not change the precedent: regulations like the

20  Moratorium that govern the use of property without physically invading it do not effect a

21  *per se* taking. The Court should grant summary judgment to the State.

22

DEFENDANTS' SUPPLEMENTAL REPLY
BRIEF RE: *CEDAR POINT NURSERY V.
HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    DATED this 4th day of August, 2021.

2                                    ROBERT W. FERGUSON
                                     Attorney General
3

4                                    *s/ Cristina Sepe*
                                     CRISTINA SEPE, WSBA #53609
5                                    BRIAN H. ROWE, WSBA #56817
                                     Assistant Attorneys General
6                                    JEFFREY T. EVEN, WSBA #20367
                                     Deputy Solicitor General
7                                    800 5th Avenue, Ste. 2000
                                     Seattle, WA  98104
8                                    (206) 474-7744
                                     cristina.sepe@atg.wa.gov
9                                    brian.rowe@atg.wa.gov
                                     jeffrey.even@atg.wa.gov
10                                   *Attorneys for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' SUPPLEMENTAL REPLY
BRIEF RE: *CEDAR POINT NURSERY V.
HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1

## DECLARATION OF SERVICE

2          I hereby declare that on this day I caused the foregoing document to be

3   electronically filed with the Clerk of the Court using the Court's CM/ECF System

4   which will serve a copy of this document upon all counsel of record.

5          DATED this 4th day of August, 2021, at Tacoma, Washington.

6

7                                          s/ Cristina Sepe
                                           Cristina Sepe, WSBA #53609
8                                          Assistant Attorney General
                                           800 5th Avenue, Ste. 2000
                                           Seattle, WA  98104
9                                          (206) 474-7744
                                           cristina.sepe@atg.wa.gov
10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANTS' SUPPLEMENTAL REPLY
BRIEF RE: *CEDAR POINT NURSERY V.
HASSID*, 141 S. CT. 2063 (2021)
NO. 1:20-cv-03182-SAB

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744